DAVID NEWMAN, Respondent, *v.* THE METROPOLITAN ELEVATED RAILWAY COMPANY, et al. Appellants.

The provisions of the Rapid Transit Act (§ 20, Chap. 606, Laws of 1875) and the General Railroad Act (Chap. 140, Laws of 1850) declaring that commissioners of appraisal shall not, in determining the amount of compensation to be made to parties owning or interested in property acquired for the construction and operation of railways by corporations organized under them "make any allowance or deduction on account of any real or supposed benefits which the party in interest may derive from the construction of the proposed railroad," apply simply to the land actually taken. Whatever land is taken must be paid for at its full market value, with no deduction, although the remainder of the land owner's property may be largely enhanced in value by the operation of the railroad.

In considering, however, the question of damages to the remainder the commissioners must consider the effect of the road upon the whole of that remainder, its advantages and disadvantages, benefits and injuries, and if the result is beneficial there is no damage and nothing can be awarded.

While the easements, which the owners of land abutting upon public streets have therein, are interests in real estate and constitute property, in estimating their value when taken by a railroad company under said acts, they cannot be considered as property separate and distinct from the land to which they are appurtenant, and the right of the property owner to compensation is measured, not by the value of the easements separate from his land, but by the damages which the land sustains because of the loss of the easements.

In estimating the damages, therefore, for the taking away or interfering with such easements, the benefits the abutting property receives from

the operations of the railroad are to be taken into consideration as well as the loss or damage because of the interference with the easements.

An action to recover damages, to plaintiff's leasehold interest in property abutting upon certain streets in the city of New York because of interference with his easements in said streets by the construction and operation of the M. railway was tried on the assumption that said structure caused a permanent impairment of the easements. By the act of 1872 (§ 3, Chap. 585, Laws of 1872) the above provisions of the General Railroad act are made applicable to the G. E. R. R. Co. to whose rights the M. R. Co. has succeeded. Evidence was given tending to show that while the upper parts of the building on the premises had been made less desirable for the purpose for which they were used, *i. e.*, as dwellings, by reason of the defendants' structure, and in consequence thereof the rents had fallen, the first floor, used as a restaurant, had become more desirable for business purposes and greatly enhanced in rental value. The court charged that in estimating the damages to plaintiff's leasehold interests caused by defendants' interference with the easements appurtenant to the premises, the jury had no right to take into consideration any benefits to the premises, " which have arisen by the construction of the road as shown by the evidence." *Held*, error.

(Argued January 29, 1890 ; decided March 4, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 18, 1887, which affirmed a judgment in favor of plaintiff entered upon a verdict, and affirmed an order denying a motion for a new trial.

At the commencement of this action the plaintiff held a lease of property situated upon the northwest corner of Church and Rector streets in the city of New York. The lease bore date May 1, 1877, and was for the term of fifteen years, with a right of renewal for an additional term of ten years. Upon the property there was a brick building five stories in height, the first floor of which was used as a restaurant, and the other floors for dwellings.

The Metropolitan Elevated Railway was constructed through Church street in front of said premises, and in Rector street there had been erected by the defendants a station from which a covered platform ran to Greenwich street and there connected with the Ninth avenue elevated road.

The plaintiff claimed in his complaint that the defendants' structure interfered with the ingress and egress to and from his premises, and also impaired the circulation of light and air from the street to his building, and deprived him of its customary and lawful use, and greatly reduced its value to him as lessee.

It was admitted that the action was brought and tried as one to recover in one sum the whole damage sustained and to be sustained from the depreciation of the plaintiff's estate, on the assumption that the defendants' structure caused a permanent impairment of the easements in the street for light, air and access.

The court, having charged the jury that "the damages to plaintiff's leasehold was to be measured by the depreciation of rents caused by defendants' structure, in depriving the premises of the accustomed light, air and egress which it had before said structure was placed thereon," and that in considering the question of damages "the fact that real estate had arisen generally in that district of the city did not relieve the railroad company from the element of damage," was requested by the defendants to charge as follows: "That in estimating the damages to the leasehold interest in this plaintiff caused by the interference by the defendants with the light, air and access appurtenant to the premises, the jury may take into consideration any benefits peculiar to his house which have arisen by the construction of the road as shown by the evidence." To this the court replied: "That I refuse to charge. On the contrary the jury have no right to take any such fact into consideration."

The defendants gave evidence tending to show, and from which the jury might have found, that while the upper parts of the building had been made less desirable for dwellings by reason of the erection of the defendants' structure, and in consequence thereof the rents had fallen, the location of the station in Rector street had, from the greater number of people resorting there, caused the first or store floor of the building to become more desirable for business purposes, and greatly enhanced in rental value.

*Julien T. Davies* and *W. Bourke Cockran* for appellant. The court erroneously interpreted the description in plaintiff's lease as including one-half the land forming the bed of Rector street. (3 Kent's Comm. 433; *Lee* v. *Lee*, 27 Hun, 2; *Babcock* v. *Utter*, 1 Abb. Ct. App. Dec. 27; *Sibley* v. *Holden*, 10 Pick. 249; *K. C. F. Ins. Co.* v. *Stevens*, 87 N. Y. 287; *Jackson* v. *Hathaway*, 15 Johns. 447; *English* v. *Brennan*, 60 N. Y. 609; *Bank of Buffalo* v. *Nichols*, 64 id. 65; 4 Hill, 369; 20 Wend. 149; *Feering* v. *Irwin*, 4 Daly, 385, 389; *Paton* v. *N. Y. E. R. R. Co.*, 3 Abb. [N. C.] 306, 342, 345; *Anderson* v. *James*, 4 Robt. 35; 6 Alb. L. J. 166; *Abendroth* v. *M. R. Co.*, 19 J. & S. 280; *Burbank* v. *Fay*, 65 N. Y. 57; *Felton* v. *Simpson*, 11 Iredell, 84.) The court erred in refusing to charge that in estimating the damages to plaintiff's leasehold interest, caused by defendant's interference with the light, air and access, the jury might take into consideration any benefits peculiar to plaintiff's premises, which had arisen by the construction of the road, as shown by the evidence. (Laws of 1850, chap. 140, § 16; Laws of 1872, chap. 885, § 3; Laws of 1875, chap. 606, § 20; *In re N. Y. E. R. R. Co.*, 70 N. Y. 327; *In re Gilbert*, 70 id. 361; *Story* v. *L. R. Co.*, 90 id. 122; *Rexford* v. *Knight*, 15 Barb. 627; *Betts* v. *City of Williamsburgh*, Id. 252; *Granger* v. *City of Syracuse*, 38 How. Pr. 308; *Genet* v. *City of Brooklyn*, 99 N. Y. 296; Lewis on Eminent Domain, §§ 14, 52, 471; *Drucker* v. *E. R. R. Co.*, 106 N. Y. 157, 163, 164; *Gould* v. *H. R. R. R. Co.*, 6 id. 558; *C. R. Co.* v. *Payne*, 16 Barb. 273; *A. R. Co.* v. *Lansing*, Id. 68; Cooley on Const. Lim., 565; *Setzler* v. *R. R. Co.*, 112 Penn. 56, 65; *Bangor* v. *McComb*, 60 Me. 290; *Meacham* v. *F. Co.*, 4 Cush. 291; *Nicholson* v. *R. R. Co.*, 22 Conn. 74; *Adams* v. *R. R. Co.*, 57 Vt. 240; *Paducah* v. *Stovall*, 12 Heisk. [Tenn.] 1; *Adden* v. *R. R. Co.*, 55 N. H. 413; *Raleigh* v. *Wicker*, 74 N. C. 220; *Jacob* v. *City of Louisville*, 9 Dana, 114; *Shipley* v. *R. R. Co.*, 34 Md. 336; *Fremont* v. *Whalen*, 11 Neb. 585; *Page* v. *C., etc., R. R. Co.*, 70 Ill. 324; *Dupuis* v. *R. Co.*, 115 id. 100; *Chicago Co.* v. *Blake*, 116 id. 163; *McReynolds* v. *R. Co.*, Id. 152; *O. C. R.*

*R. Co.* v. *Wait,* 3 Oregon, 91 ; *Cleveland* v. *P. R. R. Co.,* v. *Ball,* 5 O. St. 586; *A. R. R. Co.* v. *Lansing,* 16 Barb. 68 ; *T. & B. R. R. Co.* v. *Lee,* 13 id. 169 ; *Henderson* v. *N. Y. C. & H. R. R. R. Co.,* 78 N. Y. 423 ; *In re U. R. R. Co.,* 56 Barb. 456 ; *N. Y. C. R. R. Co.,* v. *Judge,* 15 Hun, 63 ; *N. Y., L. & W. R. R. Co.* v. *Haskin,* 29 id. 1 ; *N. Y., L. E. & W. R. R. Co.,* 49 id. 539 ; *Lahr Case,* 104 N. Y. 295, 296 ; *Williams* v. *N. Y. C. R. R. Co.,* 16 id. 97 ; *Drake* v. *H. R. R. R. Co.,* 7 Barb. 508 ; Laws of 1882, chap. 393 ; Laws of 1875, chap. 606 ; *Green* v. *Neal,* 6 Pet. 291; *Elmendorff* v. *Taylor,* 10 Wheat, 159 ; Condensed Rep. U. S. 46.) The court erred in allowing the jury to include in their verdict, which was to be for an amount sufficient to compensate plaintiff for the depreciation in value of his interest in the premises, the amount also of any rents he may have lost. (19 J. & S. 450.)

*James M. Smith* and *Inglis Stuart* for respondent. If the exception as to the election of defendants as to damages had been tenable, it was subsequently waived. (*Lahr* v. *M. R. R. Co.,* 104 N. Y. 294.) Where land is bounded on a street, it carries the ownership to the center of the street, subject to the easement in favor of the public. The plaintiff's lease gave him all the rights the owner possessed during its continuance. (*Bissell* v. *N. Y. C. R. R. Co.,* 23 N. Y. 61 ; *Perrin* v. *N. Y. C. R. R. Co.,* 36 id. 120 ; *Dunham* v. *Williams,* 37 id. 251.) Plaintiff was entitled to have the street kept open and continued as a public street for the benefit of his abutting property. (*N. Y. E. R. R. Co.,* 90 N. Y. 122 ; *Lahr* v. *M. R. R. Co.,* 104 id. 268.) The evidence as to the benefit caused by the erection of the road was properly excluded. (Laws of 1875, chap. 606, § 20.) The exception to the ruling of the court, or the motion to dismiss the complaint, cannot be sustained. (*Ireland* v. *M. R. R. Co.,* 20 J. & S. 455 ; *Story* v. *N. Y. E. R. R. Co.,* 90 N. Y. 122 ; *Lahr* v. *M. E. R. R. Co.,* 104 id. 268.) If on review of the whole case it should appear that some technical error should be discovered, the judgment should not be disturbed. The charge of the court to the jury

was as favorable for the defendants as the facts would justify. (*Caldwell* v. *N. J. S. Co.*, 47 N. Y. 286.) If all the evidence as to the "*opinions*" of the witness is eliminated from the record, the facts proved are sufficient to sustain the verdict of the jury. (*McGean* v. *M. R. Co.*, 117 N. Y. 219 ; *Slocowitch* v. *O. M. Ins. Co.*, 108 id. 62.) The objections and exceptions taken by defendants are too general to be available. They do not specify the ground of objection. In order to be available they must be specific. (*Bergman* v. *Jones*, 94 N. Y. 51; *Lemeyer* v. *Turnquist*, 85 id. 516 ; *Ward* v. *Kilpatrick*, Id. 413; *Turner* v. *City of Newburgh*, 109 id. 301.)

Brown, J. The basis of the court's refusal to charge as requested is to be found in the Rapid Transit Act (chap. 606, Laws 1875, § 20) and in the General Railroad Law (chap. 140, Laws 1850, § 16) which by section 3, chapter 885, Laws of 1872, was made applicable to the Gilbert Elevated Railroad Company to whose rights the Metropolitan railroad company succeeded.

These laws provide that commissioners of appraisal shall not, in determining the amount of compensation to be made to parties owning or interested in property acquired for the construction and operation of railways formed thereunder, " make any allowance or deduction on account of any real or supposed benefits which the party in interest may derive from the construction of the proposed railroad."

What is the true meaning of this provision and how far it is applicable to a case of the character we are considering, is a question we are to determine upon this appeal.

The principle upon which compensation is to be made to the owner of lands taken by proceedings under the General Railroad Law has been frequently considered by the courts of this state and the rule is now established that such owner is to receive, first, the full value of the land taken, and, second, where a part only of land is taken, a fair and adequate compensation for all injury to the residue sustained or to be sustained by the construction and operation of the railroad. (*T & B. R. R. Co.* v. *Lee*, 13 Barb. 169 ; *In re C. & S. V.*

*R. R., Co.*, 56 Barb. 456; *In re P. P., & C. I. R. R. Co.*, 13 Hun, 345; *In re N. Y. C.* v. *&H. R. R. R. Co., Judge*, 15 Hun, 63; *In re N. Y., L. & W. R. Co.*, 29 Hun, 1; *In re N. Y. L. & W. R. Co.*, 49 Hun, 539; *Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 423.)

The first element in the award represents the compensation for land which the railroad takes, and to which it requires title. The second element represents damages which are the result or consequences of the construction of the road upon property not taken, and which the owner still retains. Such damages are wholly consequential and to ascertain them necessarily involves. an inquiry into the effect of the road upon the property, and a consideration of all the advantages and disadvantages resulting and to result therefrom.

The rule is well stated in Lewis on Eminent Domain, section 471, as follows : " When part of a tract is taken just compensation would therefore consist of the value of the part taken, and damages to the remainder, less *any special benefits to such remainder by reason of the taking and use of the part for the purpose proposed.*"

In this rule thus settled in this state, and which controls all awards for taking of land under the General Railroad Act, is to be found the true application of the statutory provision which forbids deductions and allowances to be made by commissioners for any real or supposed benefits, which the parties. interested may derive from the construction of the railroad.

Whatever land is taken must be paid for by the railroad company at its full market value, and from such value no deduction can be made, although the remainder of the land owners property may be largely enhanced in value as a result. of the operation of the railroad. But in considering the question of damages to the remainder of the land not taken. the commissioners must consider the effect of the road upon the whole of that remainder, its advantages and disadvantages, benefits and injuries, and if the result is beneficial, there is no damage and nothing can be awarded.

The rule established under the General Railroad Law must

govern and control awards made under the Rapid Transit Act. The last named act confers upon corporations formed thereunder, the power to acquire property for railroad purposes, and the statutory proceedings prescribed are substantially the same as those under the General Railroad Act and no reason is apparent why the same rule should not apply to proceedings under both acts.

This court has decided that owners of land abutting upon public streets have easements therein for ingress and egress to and from their premises, and for the free circulation of light and air to their property which easements are interests in real estate, and constitute property within the meaning of that term as used in the Constitution.

The easement is the property taken by the railroad company. But in estimating its value it is impossible to consider it as a piece of property, separate and distinct from the land to which it is appurtenant, and the right of the property owner to compensation is measured, not by the value of the easement in the street separate from his abutting property, but by the damages which the abutting property sustains as a result or consequence of the loss of the easement.

It follows that in making an award to a party situated as the plaintiff was with reference to the defendants' railroad, there would be no compensation for property taken beyond a nominal sum, and that his right to recover would rest chiefly upon proof of consequential damages.

An estimate of such damages as I have already shown, involves an inquiry into the effect of the railroad upon the whole property and a consideration of all its advantages and disadvantages. If the rental value of the whole building was shown to have been diminished there was injury for which plaintiff was entitled to recover, but if the diminished rental value of the upper floors was equal or overcome by increased rental value in the store then there was no injury and no basis for a recovery of substantial damages against the defendants.

While the precise question presented by the exception in this case has not heretofore been decided in this court it is cov-

ered by the decisions under the General Railroad Law which have been cited, and the rule established by those decisions has recently been applied in the second judicial department to the case of an elevated railroad. (*In re Brooklyn Elevated R. Co.* v. *Phillips*, 28 State Reporter 627.)

That case was an appeal by property owners from an award of nominal damages in proceedings by an elevated railroad company to condemn an easement in a street. The court said: "The inquiry necessarily takes in the advantages from the railroad when the extent of the injury is to be based upon the diminution of value by reason of its construction. The basis of appraisement must then be the difference in value between the abutting house before the construction of the railroad and afterward."

In *Drucker* v. *Manhattan R. Co.* (106 N. Y. 157), this court held admissible evidence offered by the property owner that trade and business had fallen off in the street since the erection of the railroad, and that property was for that reason diminished in value. If such evidence is competent to sustain a recovery it is difficult to see why it is not competent for the railroad company to show that the effect of the road has been to cause an increase in business, and hence an enhancement of the value in abutting property.

The question whether, in awarding damages flowing from the construction of a railroad, its injurious effect upon a part of a residue of a tract of land could alone be considered, has been expressly decided in Illinois. (*Page* v. *Chicago R. R. Co.*, 70 Ill. 324.)

That case was an assessment of damages for a right of way across a tract of forty acres of land. Compensation was awarded for the part taken, but the evidence showing that the residue of the tract would be enhanced in value by the construction and operation of the road, no consequential damages were allowed to the land owner. The owner claimed that a strip of land next to the railroad was lessened in value by the proximity of the road.

The constitutional provision in Illinois relating to the taking of property for public use is the same as our own, and the

statute under which the assessment was made provided that benefits should not be set off against or deducted from compensation.

The award was sustained on appeal, the court holding "that it was not the damages to a strip lying within a limited number of feet of the road-bed that the jury were required to assess, but the damages, if any, to the entire tract. That the effect of the road upon a part of the tract was not to be considered, but upon the whole tract. "This," the court said, "is not deducting benefits from damages, but it is ascertaining whether there be damages or not." To the same effect is the case of *Oregon Central R. R. Co.* v. *Wait* (3 Oreg. 91).

The statutes we have considered are founded upon the provision of the Constitution forbidding the taking of private property for public purposes without just compensation. Their purpose is to do exact and equal justice among all citizens of the state, and to award to everyone full and fair compensation for all property taken for public use or injured by the erection of public improvements.

The rule established by the courts and prevailing under the General Railroad Law accomplishes in a broad and liberal manner that object.

The meaning of the expression "just compensation" has not been limited to the value of property actually taken, but has been held to include all consequential injuries which the land owner may sustain by reason of depreciation of value in the residue of the property, by reason of the taking of a part and the construction thereon of the public improvement.

This rule affords full indemnity to the property owner, and leaves him in as good condition as he was before the construction of the road. And this is all that any citizen has a right to ask.

If the rule which the court held in this case is to govern awards made against railroad companies whose structures are erected in the public streets under public authority, when no land is taken, and the compensation is confined to injuries sustained by abutting property, the companies will be compelled

in many instances to pay where no injury has been done, and parties will recover who have sustained no loss. Such a rule has not yet received judicial sanction.

The increase of value resulting from the growth of public improvements, the construction of railroads and improved means of transit accrues to the public benefit generally, and the general appreciation of property consequent upon such improvements belongs to the property owner and the railroad company are not entitled to the consideration of that element in the ascertainment of the compensation it must pay to the abutting proprietor. But the special and peculiar advantages which property receives from the construction and operation of the road, and the location of the stations are elements which enter largely into the inquiry whether there is injury or not, and the jury must consider them and give to them due weight in their verdict.

Between this rule and the statutory provision quoted there is no conflict.

The property owner will in every instance receive the "just compensation" which the Constitution secures to him for his property which is taken or injured by the railroad, and the corporation will be compelled to pay whatever damages result from the erection of their structures and the construction of the road.

Our conclusion is that the defendant was entitled to the instruction requested, and the exception to its refusal was well taken.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur; FOLLETT, Ch. J., in result.

Judgment reversed.