SARAH LAZARUS and Others, Respondents, *v.* THE METROPOLITAN ELEVATED RAILWAY COMPANY and Another, Appellants.

*Elevated railroads — rental value of premises affected thereby — vacant rooms — evidence — effect of the road upon one's business not a conclusion but a fact — evidence as to accessibility of premises — easements of nominal value — parties plaintiff.*

On the question of the rental value of a building in which there are vacant rooms, as affecting the amount of damages claimed by reason of the construction and operation of an elevated railroad, it is error to exclude evidence as to the amount of rent demanded for the vacant rooms, and then exclude such rooms from the computation of present rental value.

The vacancy of a building or of rooms in a building, caused by the demand of exorbitant rents, is not an element of damages imputable to an elevated railroad.

The exclusion of competent and material evidence sought to be elicited by the defendant from the plaintiff's witnesses, in an action against an elevated railroad involving the question of rental value, as to the occupancy and rental during periods covered by the plaintiff's evidence when the premises were rented as a whole and sublet, cannot be sustained upon appeal on the ground that the witnesses had no personal knowledge on the subject, when that objection was not raised below, and the witnesses did not claim inability to answer on account of ignorance.

Questions put to the occupant of premises, as to whether his business was injured by an elevated railroad, and whether access to his premises was affected by the road, are not objectionable as calling for conclusions and not facts.

When the situation of premises alleged to have been damaged by an elevated railroad, the construction of the road, and the location of a station near the premises, have been proved before a referee, it becomes his province to judge as to whether the premises were rendered more accessible by the road and station, and it is then proper to exclude the evidence of witnesses, even though they may be experts as to value, in regard to the effect of the road upon the accessibility of the premises.

Easements appurtenant to land taken for railroad uses, apart from any damages to the land, have in themselves only a nominal value; and it is error for a referee to refuse a request for a finding to that effect, in an action against an elevated railroad involving the question of damages caused by its construction and operation.

The executors of a deceased ancestor are not necessary parties in such an action merely because of the existence of a power of sale in the will of such ancestor from whom the plaintiffs took the premises in suit, and it is incumbent upon the defendant railroad company, before it can render available an objection based upon the nonjoinder of the executors as parties plaintiff, to show some reasonable ground for apprehending some infirmity of title by reason of the unsettled condition of the ancestor's estate.

The provisions of the Code of Civil Procedure, which require defects appearing upon the face of a complaint to be deemed waived, unless taken advantage of by demurrer, do not apply to actions in equity in such a sense as to relieve a court of equity from the duty of bringing in, before rendering judgment, all parties who may be interested in the result, whether upon demand of the parties or not.

APPEAL by the defendants, the Metropolitan Elevated Railway Company and the Manhattan Railway Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the city and county of New York on the 19th day of October, 1892, upon the report of a referee.

*A. O. Townsend*, for the appellants.

*N. S. Spencer*, for the respondents.

VAN BRUNT, P. J.:

This action was brought to enjoin the operation of the defendants' road in Trinity place in the city of New York in front of plaintiffs' premises, situate on the northeast corner of Trinity place and Exchange alley, having a frontage on Broadway and extending along Exchange alley to Trinity place.

The referee before whom this action was tried has not thought it necessary to give any intimation as to how he arrived at the results which were included in his report, which contains some rather novel conclusions of law ; and, as a consequence, this court has been compelled to examine the whole of the bulky record presented upon this appeal for the purpose of ascertaining, if possible, the theory upon which the referee has reached the conclusions embodied in his report, and these labors have resulted in but little success.   But it

seems to be apparent, from an examination of such report, that the referee has fallen into serious errors, in consequence of which a new trial must be had.

There is one peculiar feature which is presented by his finding in his report, in respect to past damages, and the evidence which was introduced in respect thereto, which shows that he seems to have been of the opinion that vacant rooms, caused perhaps by the demand of exorbitant rentals, formed an indication of the damages sustained by the maintenance and operation of the defendants' railroad. Because all evidence was excluded by the referee in the case of rooms which were vacant in the building, as to the amount of rent which was asked for the same; and the amount of annual rentals at the time of the making of the report, included therein, was the amount for which the building was then rented exclusive of such vacant rooms. We find that certain rooms which had been accustomed to be rented, happened to be vacant at this time, and the question was asked of the witness who had charge of the premises: " What is the charge or price at which you hold that room at the present time ? " This question was objected to and excluded, and the referee finds the actual rentals of the premises excluding the vacant rooms, and we have no indication whatever as to whether the cause of such vacancy may not have been the demand of exorbitant rents. If such a rule were to prevail, all that it would be necessary for the owner of premises upon the line of the elevated railroad to do, would be to ask rents far beyond the amounts which persons always pay for similar accommodations, and he would have an empty building, and could claim that it was the result of the operation of the railroad, and could recover as damages the total value of his property. The results of this ruling necessarily affect both past and future damages, because the value of the premises is necessarily affected by the annual rental received therefrom.

These premises having been let during certain of the periods covered by the evidence, as a whole, and sublet, the referee excluded evidence upon the part of witnesses upon the part of the plaintiffs as to the occupancy of these buildings, and the rent thereof during the times when said building was rented as a whole to certain tenants and sublet by them.

It is sought to sustain such ruling now by the claim that the wit-

ness had no personal knowledge in regard to this matter and, therefore, could not testify thereto, and that a subsequent witness did give testimony upon that point. But no objection was taken upon that ground, and it is impossible for the court to determine whether the witness had personal knowledge or not, until he claimed inability to answer because of ignorance. The objection was based upon the ground apparently that such evidence was incompetent and immaterial, which clearly was error. And although a subsequent witness may have given testimony which covered this ground, which we have been unable to determine by an inspection of this record, the rulings show that the referee had an erroneous view in regard to the relevancy of testimony affecting the question of value, and it may have pervaded the whole of his action.

The referee further excluded evidence from occupants of the premises as to whether in fact the structure of the railroad and the operation of its trains interfered with the business of such occupant, upon the ground that it called for the conclusions of the witness. The witness had already testified to the physical effects of the building and operation of the road, and that his rental had steadily risen until it had nearly doubled, and that most of his goods were delivered at Trinity place. And he was then asked the question whether, as matter of fact, the elevated structure and the operation of trains in Trinity place interfered with his business as a restaurant keeper, and this was excluded upon the ground that it called for a conclusion of the witness. And the further question was asked : Have you ever noticed any difficulty attending the delivery of goods in the rear of your building, which was excluded for the same reason.

These questions certainly called for no greater conclusion of the witness than much which he had testified to in regard to the physical effects resulting from the maintenance and operation of the road. They were facts which he was as competent to testify to as anybody else, as to whether his business was injured by that road, or whether access to his premises was affected thereby.

It might as well be said that the witness could not testify as to the distance between two given objects in sight, as that is a conclusion as much as was the evidence asked from the witness. Both are the results of mental operations. These questions would seem

HUN—VOL. LXIX.  25

to be especially pertinent, as the witness was examined upon the part of the plaintiffs.

Another witness who was examined on the part of the plaintiffs for the purpose of establishing the facts of the maintenance and operation of this road, and having testified upon this point, was asked the question: " The elevated road has never interfered with your work and occupation there, has it, personally ? " This question was objected to as calling for a conclusion, and was excluded. And, subsequently, the witness was asked : " Did you personally experience any inconvenience in your work from the presence of the elevated railroad ? " This was answered : " It has never interfered with me in any way."

Objection is also taken to the refusal of the referee to permit certain witnesses to testify, some of whom were examined as experts as to value, whether the premises in suit were rendered more accessible from uptown and distant points by reason of the presence of the elevated road at Rector street, and whether this station is located conveniently to these premises, or whether the premises are easily reached from the Rector street station, and whether the railroad in Trinity place renders the premises in suit more accessible than they otherwise would be.

There seems to be no error whatever in these rulings, because the referee was as competent to judge of these facts as the witnesses. The situation of the premises, the construction of the road, etc., were facts proven before the referee, and it was his province so to do and not that of the witness.

There seems also to be an exception to a refusal to find which requires notice. The referee was asked to find that the easements appurtenant to the plaintiffs' land taken for railroad uses, apart from any damages to said land from such taking, have in themselves only a nominal value, which was refused. In the case of *Bookman* v. *N. Y. El. Ry. Co.* (50 N. Y. St. Repr. 703), a similar request was made and refused, and the court held that the request should have been found, and the refusal to find showed that the court misapprehended the principles of law laid down in the cases of *Newman* v. *Metropolitan Elevated* (118 N. Y. 618) and *Bohm* v. *Metropolitan Elevated* (129 id. 576).

The learned counsel for the respondent claims that the referee

committed no error by this refusal, because the case at bar is substantially different from the cases in which this rule was enunciated in the following particular : That in the *Sperb*, *Bookman* and *Sutro* cases the court said they had carefully read the evidence and failed to find that the plaintiffs had suffered any damage by reason of the defendants' acts. And the counsel urges that from that fact the court reasoned that the trial court must have failed to apply the proper rules of law, and that they were confirmed in that conclusion by the refusal to find not only the request in question, but several others of like tenor, all tending to show to them that the proper rule had not been applied.

We have read all that the opinion in the *Bookman* case contains, and we fail to find that the court anywhere stated that they failed to find that the plaintiffs had suffered any damage by reason of the defendants' act. What they did say is that they were satisfied that in the estimate of damages, injustice was done to the defendant, and the proper rules of law were not applied in awarding the judgment, a very different condition of affairs from that assumed by the counsel. It is true that other findings are referred to as having been refused without any just reason. But the court expressly stated that the finding to which their attention was called, was in that case a crucial test as to the principles under which the court acted ; and they say that because of the principles laid down in the *Newman* and *Bohm* cases, it was important for the defendant to have a finding that substantially all the damages were consequential, so as to give room for the allowance of benefits. This importance is as great in the case at bar as it was in the *Bookman* case. But it seems to us that the requirements of that case were met by the finding of the referee that the plaintiffs were not entitled to recover damages in this action, except to the extent, if any, by which the disadvantages of defendants' railroad have exceeded the advantages thereof to the said premises, which seems to indicate that he had in mind the points which were pronounced to be so important in the *Bookman* case.

It is also urged upon the part of the appellant that it was error not to compel the bringing in of the executors as plaintiffs in the action, upon the ground that they had a power of sale, and there was no proof that debts and legacies had been paid, or that the

estate had been administered upon.  We do not see that the execu-
tors of the ancestor were necessary parties merely because of the
existence of a power of sale in the will of such ancestor, and it was
incumbent upon the defendants to show some reasonable ground for
apprehending some infirmity of title by reason of the claimed unset-
tled condition of such estate.

The point is also made that the referee erred in allowing all the
past damages to the plaintiffs in this action.  It appears that Moses
Lazarus, the ancestor, died on the 9th of March, 1885, and the past
damages recovered are computed from this date.  He left seven
children, the plaintiffs, and their mother, who under his will were
devisees of the premises in question.  Emily Lazarus died on the
19th of February, 1887, intestate, leaving the plaintiffs her only
heirs at law and next of kin.  It is perfectly clear that her adminis-
trator is entitled to her share of the damages accruing between the
5th of March, 1885, and the 19th of February, 1887.  But the
difficulty with the appellant's objection is that this question was
raised for the first time upon this appeal.  If it had been raised at
the trial, we think the court should at least have excluded her share
from the amount recovered.  But the better practice would have
been to bring in her administrators in order that the whole matter
might be settled.  It is urged that under the provisions of the Code
as to defects appearing on the face of the complaint, it must have
been taken advantage of by demurrer or it is waived.  But the
counsel confuses the rule prevailing in actions at law and actions in
equity.  The court in equity is bound before rendering judgment, to
bring in all parties who may be interested in the result, whether
upon the demand of the parties or not.

There are various other exceptions to which attention might be
called, but it does not seem to be necessary to discuss them in detail,
as we have been left entirely in the dark, as already suggested, as to
the method by which the referee has reached his conclusions, and it
is impossible for us to say but that he may have been affected, to the
injury of the defendant, by the errors to which attention has been
called.  And it would seem probable from the nature of many
of the rulings that the referee had an erroneous view of the effect
of evidence.

Under these circumstances, therefore, there is nothing to be done

except to reverse the judgment and order a new trial before a new referee to be appointed by this court, with costs to the appellants to abide the final event.

O'BRIEN and FOLLETT, JJ., concurred.

Judgment reversed and new trial ordered before a new referee to be appointed by this court, with costs to the appellants to abide the final event.