LEWISTON AND YOUNGSTOWN FRONTIER RAILWAY COMPANY, Appellant, *v.* CHARLES R. AYER and CHARLOTTE AYER, his Wife, Respondents.

*Eminent domain — exercise of the right by a railroad corporation — deductions cannot be made for benefits to property from the "public use" — definition of the term "public use" — rule of damages in cities distinguished.*

The right of the owner of a farm, of which a portion is to be taken for the construction of a railroad, to ride on such road or transport part of his property thereon upon payment of the established tolls, is a right of "public use," the benefits arising from which cannot be considered by commissioners appointed in the condemnation proceedings.

The term "public use," as employed in the Condemnation Law (Code Civ. Proc. § 3370), forbidding condemnation commissioners to make "any allowance or deduction on account of any real or supposed benefits which the owners may derive from the public use for which the property is to be taken or the construction of any proposed improvement connected with such public use," denotes such use as the landowner, as one of the public, has the right to make of the public improvement, in common with other members of the public.

*Semble,* that the rules for determining damages to improved city business real estate, resulting from the construction of street railroads, do not apply to farm property through which a railroad has been constructed.

APPEAL by the plaintiff, the Lewiston and Youngstown Frontier Railway Company, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Niagara on the 10th day of September, 1897, vacating an award of commissioners appointed under the Condemnation Law to determine the compensation to be paid by the plaintiff to the defendants for taking a strip of land for public use.

The plaintiff is a domestic corporation organized to construct and operate an electrical railroad for public use between the villages of Lewiston and Youngstown in this State. The defendant Charles Ayer owns in fee a farm through which the railroad has been constructed, and the defendant Charlotte Ayer is his wife. For the purpose of constructing the road it became necessary to acquire a strip of land thirty feet wide through the farm, and the corporation and owner being unable to agree as to the compensation to be paid therefor, this proceeding to acquire the strip of land was begun May 16, 1896, and the right of the plaintiff to acquire the land not being contested, a judgment was entered May 27, 1896, adjudging that the condemnation of the real property described was necessary for the public use and that the plaintiff was entitled to take and hold it for such use upon making compensation therefor. By the judgment three commissioners were appointed to ascertain the compensation to be made to the owners for the property taken for the public use specified. The defendants' farm contains about seventy-three acres and lies on the east side of Niagara river. The farm is a narrow one, being about thirty rods in width and about a mile in length, north and south. The highway is on the west side of the farm and adjacent to the bank of the river. The dwelling and farm buildings are on the east side of the highway. The

land taken is east of the highway and of the buildings.  About forty acres of the farm are devoted to raising apples, peaches, quinces, cherries and plums.  The strip of land taken divides the defendants' orchards, leaving twenty-five acres on the east and fifteen acres on the west of the railroad.  On the land taken there were seventeen fruit trees, and on the land not taken there were ten fruit trees from which it was necessary to cut the branches because they overhung the plaintiff's line.  The commissioners assessed the damages at $500, and in their report they certified the method by which they arrived at the result as follows :

" We further certify that in fixing the amount of such compensation to be paid by the plaintiff to the owners of the property taken by them, the commissioners have not made any allowance or deduction on account of any real or supposed benefits which the owners may derive from the public use for which the property is taken, or the construction of any proposed improvement connected with such public use.   *   *   *

" We further certify that in fixing the amount of such compensation the commissioners have taken into their consideration and given due weight to the testimony given in these proceedings, showing or tending to show that the lands of the defendants not taken by the plaintiff's railway, being the balance of said defendants' farm, are specially and peculiarly benefited by the construction and operation of the plaintiff's railway, in that said lands receive greater facilities for the shipping of fruit directly from the said farm and the conveyance of passengers directly to and from said farm, and the said commissioners have determined in the fixing of such compensation that the defendants' lands are specially and peculiarly benefited thereby and have made due allowance therefor."

Upon filing the report of the commissioners the plaintiff moved for its confirmation, and the defendants moved that it be set aside on the ground that an erroneous rule for determining the compensation to be paid had been adopted.  The plaintiff's motion was denied and the motion of the defendants granted, and it was ordered that a rehearing be had before the same commissioners.  From this order the plaintiff appealed.

*John G. Milburn,* for the appellant.

*David Millar,* for the respondents.

FOLLETT, J. :

Since 1823 the Constitution of this State has provided : "Nor shall private property be taken for public use without just compensation." (Const. 1823, art. 7, § 7; present Const. art. 1, §. 6.) Since 1846 the Constitution has also provided : " When private property shall be taken for any public use the compensation to be made therefor, when such compensation is not made by the State, shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law." (Const. art. 1, § 7.) Since 1823 many laws have been enacted conferring upon the State, municipal and private corporations the power to acquire lands for public use by exercising the right of eminent domain, by some of which, when conferring power on the State and municipalities, it has been provided that the benefits accruing to the adjacent lands of an owner whose land is partly taken may be set off against the value of the lands taken. But, so far as I know, none of the statutes authorizing a private corporation to take land for public use provides that the benefits accruing to lands not taken shall be considered in determining what shall be awarded as a " just compensation." How far what shall be deemed " just compensation " is within the control of the law-making power has never been decided nor much discussed by the courts of this State. Undoubtedly, as a condition to the exercise of the right of eminent domain, by a private corporation, the Legislature may, as against the corporation, provide what shall be deemed " just compensation," but whether it may be done as against the landowner presents a different question.

Since the passage of the Condemnation Law, in 1890, the statute has provided that " in fixing the amount of such compensation, they (the commissioners) shall not make any allowance or deduction on account of any real or supposed benefits which the owners may derive from the public use for which the property is to be taken or the construction of any proposed improvement connected with such public use." (Code Civ. Proc. § 3370.) By the 1st paragraph quoted from the report of the commissioners, it appears that they followed the command of the statute in respect to the disallowance of benefits in fixing the compensation to be paid for the strip of land taken by the railroad; but, in fixing the amount of compensation to

be awarded for the injury to the land of the defendants not taken, they violated the command of the statute by allowing the plaintiff and charging the defendants for benefits derived from the facilities afforded by the railroad for the shipment of fruit and the conveyance of passengers to and from said farm.

The term "public use," in the statute above quoted, denotes such a use as the landowner, as one of the public, has the right to make of the public improvement in common with other members of the public. The right of a person from whom part of his land is taken for the construction of a railroad to ride on it or transport his property thereon upon paying the tolls established is a public right common to all citizens, and is not such a right, use or privilege as can be taken into account in ascertaining the compensation to be awarded to him for land taken or for injuries to land not taken.

To sustain the rule adopted by the commissioners the learned counsel for the railroad cites *Newman* v. *M. E. R. Co.* (118 N. Y. 618); *Bohm* v. *M. E. R. Co.* (129 id. 576); *Sutro* v. *Manhattan Ry. Co.* (137 id. 592), and kindred cases arising in the city of New York under the Rapid Transit acts. These were suits in equity brought by the owners or lessees of city lots abutting on streets to recover "past damages" for trespasses committed, and fee damages for the permanent injury to the realty. In these cases the corporations were not seeking to acquire property by condemnation, but the plaintiffs were seeking to recover damages for trespasses committed, and to restrain the corporations from operating their roads in the future and thereby continuing their trespasses unless they paid the value of the plaintiffs' rights which had been wrongfully appropriated by the defendants.

In *Newman's* case a tenant sought to recover damages, past and fee, occasioned to his leasehold interest. He showed that the ground floor of the building was constructed and used for business purposes and the upper floors for apartments, and that the rental value of the upper floors had been greatly diminished. The railroad gave evidence from which the jury might have found that the rental value of the ground floor or the business part of the block had been greatly enhanced by the construction of the road, which fact, when the case was submitted to the jury, was held to be irrelevant and not to be considered. For this error the judgment was reversed.

In *Newman's* case no land was taken, only an easement of nominal value, and the question was how the road had affected the entire block, and not simply how it affected the upper stories thereof. It being competent to show how the railroad had affected the rental value of the upper floors, it became competent to show how it had affected the rental value of the lower floor. The damages to the entire block could be determined only by showing how all of its parts were affected. *Bohm's* and *Sutro's* cases followed the *Newman* case and held that benefits do not cease to be special ones because they affect several pieces of property in the same vicinity; and laid down the rule that all benefits, whether special or general, occasioned by the construction and operation of the road, which directly enhanced the rental value of the property, are to be considered in determining the amount of damages recoverable by abutting owners. In none of the cases has it been held that the fact that the abutter may be convenienced by riding on the road upon payment of fare, and by having his property transported thereon by the payment of the usual charge, is a benefit which can be taken into account in assessing the damages in such actions.

In determining the compensation to be made for taking part of a farm for railroad purposes the benefits occasioned it by the use which the public may make of the road cannot be taken into account, neither can the benefit which may be occasioned the farm by the fact that its owner can conveniently ride and transport his property on the proposed road be considered.

It should be observed that the conditions which surround and affect improved real estate in cities, used for business purposes and affected by street railroads, are unlike the conditions surrounding and affecting farms through which railroads are constructed, and that the rules for determining the damages occasioned to one class of property are often wholly inapplicable to the other class.

It must not be inferred from this opinion that the court regards the compensation awarded inadequate or excessive, as the amount to be awarded is solely for the determination of the commissioners. The order should be affirmed, with costs.

All concurred.

Order affirmed, with costs.