be equal to 100 per cent. since it is manifest that deterioration to some extent must precede the loss of efficiency, and the mere fact that the efficiency remains stable does not necessarily contravene the other fact that deterioration has set in.

In the case at bar the Commission followed the rule laid down by the Court of Appeals in People ex rel. Manhattan Ry. Co. v. Woodbury, supra, as to the method of estimating the depreciation and the rule indicated by the Knoxville Case of deducting the thus ascertained amount of accrued depreciation from the cost of reproduction new to ascertain the present value of the tangibles in use. We think this entirely proper, especially in view of the fact that it allowed appreciation in land values. If, in addition, there should be allowed, as we have indicated, an additional amount as for going concern and an additional amount for the cost of repaving under the present paved streets, we think that the relator will have been fairly treated.

[5] We are of opinion that upon the other matters going to make up the item of capital invested upon which a fair and reasonable return is to be calculated the decision of the Commission is right. In its calculation of income, however, it has included an item of $35,000 as the annual increase in the value of the land of the company. This we regard as erroneous. The land is used for the business of the company and is appropriate therefor. So long as the land is held and used for such purpose increase in value cannot be considered as income or as available for the payment of debts, taxes, or dividends.

Upon the argument both sides suggested that this court should make a final determination fixing the rate. This we are unwilling to do, preferring to confine ourselves to the determination of the principles to be applied, leaving the readjustment of the calculations of figures to the administrative board fully equipped for that purpose. Nor are we prepared to say that the valuation of the two items which we think should have been taken into consideration by the Commission is conclusively established. Upon the whole case we are of opinion that the Commission might well have adopted the rate offered to be consented to by the company.

Writ sustained and determination reversed, with $50 costs and disbursements to the relator, and the matter remitted to the Public Service Commission for action in accordance with this opinion. All concur.

***

LONG ISLAND R. CO. v. STATE.

(Supreme Court, Appellate Division, Third Department. May 7, 1913.)

1. EMINENT DOMAIN (§ 184*)—EXERCISE OF POWER—WAIVER OF STATUTORY REQUIREMENTS.

Laws 1884, c. 508, relative to the construction of a canal in Suffolk county, authorized the superintendent of public works to enter upon all lands necessary for making, digging, and perfecting a canal, to enter into agreements or contracts for the purchase of such land, if such agreements could be made, to file maps, etc., in case of disagreement, where-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

upon title should vest in the state, and the owner should be entitled to compensation to be ascertained as prescribed by law. Section 5 provided that, if it should be necessary to occupy the lands of any railroad company or cut through or intersect them, the superintendent should give 90 days' notice of such intention to the company, and that, in case of disagreement as to the amount of compensation, it should be ascertained as prescribed by law. Laws 1884, c. 336, prov:ded that in the construction or improvement·of any canal, whereby it should be necessary to appropriate private lands, the superintendent of public works should serve upon the owner or occupant a notice of such appropriation, describing the lands so appropriated. Without giving the 90 days' notice required by chapter 508, a canal was constructed through claimant's railroad right of way; a railroad bridge being constructed over the canal. The railroad company was later obliged by the unsafety of the bridge to practically construct a new bridge, and in 1893 a claim for the cost of such bridge was allowed by the board of claims, and judgment rendered for the company. Prior to filing the claim tide gates in the canal were washed out, permitting the tides to widen and deepen the canal, and in 1898 requiring the construction of a new bridge, for the cost of which the company filed a new claim. *Held* that, by submitting its claim in 1893, the company waived the 90 days' notice, and could not thereafter withdraw that waiver or take advantage of the failure on the part of the state to give the notice.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 498; Dec. Dig. § 184.*]

2. EMINENT DOMAIN (§ 243*)—AWARD OF COMPENSATION—CONCLUSIVENESS.
The railroad company was not entitled to the cost of the second bridge constructed by it, since there was but one taking of its property, and under its claim in 1893 it could have recovered damages, not only for the easement acquired by the state, but for any damages which might result to its right of way.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 551, 627–629, 700; Dec. Dig. § 243.*]

3. EMINENT DOMAIN (§§ 138, 145*)—COMPENSATION—ELEMENTS.
Under the rule that private property shall not be taken for public purposes without just compensation, such compensation consists of the value of the part of the property taken, and damages to the remainder, less any special benefits to such remainder by reason of the taking and use of the part for the purpose proposed.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 370, 378–389; Dec. Dig. §§ 138, 145.*]

4. JUDGMENT (§ 713*)—CONCLUSIVENESS—MATTERS CONCLUDED.
A judgment of a court of competent jurisdiction is final and conclusive on the parties, not only as to the issues actually determined, but as to every other question which they might or should have litigated.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1063, 1066, 1099, 1234–1237, 1239, 1241, 1247; Dec. Dig. § 713.*]

5. STATES (§ 178*)—CLAIMS AGAINST STATE.
If, under Code Civ. Proc. §. 264, as originally added by Laws 1897, c. 36, authorizing the Court of Claims to hear and determine any claim against the state which shall have accrued within two years before the claim is filed, the court could allow a claim for a continuous trespass by the state on a railroad company's property, a claim could not be allowed on that theory where it was not based on a trespass, but was urged on the ground that it was a part of the damages growing out of the original taking of an easement through the right of way of the company, and it

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was not alleged that the damages accrued within two years preceding the filing of the claim.

[Ed. Note.—For other cases, see States, Cent. Dig. § 166; Dec. Dig. § 178.*]

Appeal from Court of Claims.

Claim by the Long Island Railroad Company against the State for $21,135.19. From a judgment dismissing the claim, the claimant appeals. Affirmed.

Argued before SMITH, P. J., and LYON, HOWARD, and WOODWARD, JJ.

Joseph F. Keany, of New York City (Alfred A. Gardner, of New York City, of counsel), for appellant.

Thomas Carmody, Atty. Gen. (Joseph A. Kellogg, Deputy Atty. Gen., of Glens Falls, of counsel), for the State.

WOODWARD, J. Chapter 508 of the Laws of 1884 authorized the superintendent of public works to construct "a channel or canal between the waters of Shinnecock and Peconic Bays, at Canoe place, in the town of Southampton, county of Suffolk," and for this purpose the superintendent was authorized "to enter upon all and singular the land or lands necessary for making, digging and perfecting the said channel or canal and devices pertaining thereto, and to enter into agreements or contracts for the purchase of such land if such agreement can be made and the said land purchased at a fair value." Then followed the usual provision for filing maps, etc., in the case of disagreement, or the incompetency of the owners to convey, whereupon the title to such land was declared to vest in the state. The owner of any land so taken, it was provided, "shall be entitled to compensation in damages, to be ascertained and appraised as prescribed by law." Section 5 of the act then provided that:

If "it shall be necessary for said superintendent to occupy the lands of any railroad company for the purpose of said channel or canal, or to cut through or to intersect the same, he shall give at least ninety days' notice of such intention to said railroad company, and in case of disagreement as to the amount of compensation to be made therefor, the same shall be ascertained as prescribed by law."

The method of ascertaining the amount of compensation to be paid in cases of this character was prescribed by chapter 336 of the Laws of 1884, which provided that in the—

"construction or improvement hereafter of any canal or feeder, whereby the superintendent of public works or other authorized agent of this state shall appropriate private lands, streams or waters, the said superintendent of public works or other authorized agent of the state shall serve upon the owner, owners or occupant of said lands, streams or waters a written or printed notice of such appropriation duly signed by him, which notice shall contain an apt and sufficient description of the lands, streams or waters so appropriated."

The second section of the act provided that the board of claims—

"shall have jurisdiction to hear, audit and determine the claim of the owner or owners of such lands, streams or waters and to allow thereon such sums as should be paid by the state, provided such claim shall be filed within two

years after the service of said written or printed notice, as provided in section one of this act."

Acting under the authority of chapter 508 of the Laws of 1884, the state had prior to October, 1885, excavated the canal nearly up to the Long Island Railroad Company's right of way through the lands of other owners. It is conceded that the superintendent of public works never served the 90 days' notice required by the fifth section of chapter 508 of the Laws of 1884 upon the railroad company, and that there was never any written notice of an appropriation of the railroad company's land, as provided in section 1 of chapter 336 of the Laws of 1884. As the work approached the railroad right of way, the superintendent submitted to the railroad company plans for the intersection, which plans were disapproved by the railroad company, which sought relief through an injunction, in which it was unsuccessful. Long Island Railroad Co. v. Shanahan, 39 Hun, 657. The bridge suggested by the superintendent as a means of carrying the railroad over the canal was constructed, and provided for a waterway 40 feet in width, with abutments and other attachments, on the right of way of the railroad company. The exact date of this construction does not appear, but it was probably some time during the year 1886. In the early part of 1892 the bridge abutments became unsafe, owing to the action of the tides and currents, and the railroad company, to protect its adjacent right of way, was obliged to strengthen and repair the structure. It thereupon filed a claim with the board of claims in May, 1893, and procured a judgment for repairing and strengthening the bridge, and the bill of particulars appearing in the record shows that this work embraced practically the construction of a new bridge. Prior to the filing of the claim in May, 1893, upon which judgment was found in favor of the railroad company, and in February of that year, a dam or tide gates constructed by the state in connection with the canal about 100 feet below and south of the bridge was washed out and destroyed, and it is claimed that the tides scoured or washed out the channel from a width of 40 feet to 80 or 90 feet, and that the depth of the canal increased from 4 to 13 feet, and later to 30 feet. Some or all of these facts had developed, as above indicated, prior to the filing of the claim for the reconstructed bridge in 1893, and it is conceded by the appellant (the railroad company) that:

The "award upon the claim filed in May, 1893, was for damages for a permanent appropriation of an easement under the law of eminent domain, the nature and extent of which easement were defined by the plans of the original bridge and the actual occupation pursuant to those plans."

The action of tides and currents persisted it appears, and in 1898 the railroad company constructed a new bridge, with a span of 210 feet, upon the site of the old bridge; the plans for such bridge being approved by the state engineer. This bridge was completed in August or September, 1889, and on the 27th day of April, 1900, the claim now under review was filed with the Court of Claims, and was for an amount equal, it is claimed, to the actual expense of constructing the new bridge. This claim has been rejected, the Court of Claims holding that the recovery under the claim of May, 1893, was a bar to the present action. The railroad company appeals from the judgment.

[1] The appellant's theory seems to be that the judgment in its favor in 1893 was an adjudication under the provisions of chapter 508 of the Laws of 1884, an act providing for the exercise of the power of eminent domain, and that subsequently the state, by means of its negligence, appropriated an additional strip of land, and that out of this wrong arose a new right to compensation under the original statute, and that in some manner it is entitled to take advantage of the failure on the part of the state to give the notices prescribed by chapters 336 and 508 of the Laws of 1884. In this we are unable to agree. When the railroad company submitted its claim under the provisions of the statute above mentioned in 1893, and accepted the judgment of the court, it elected to waive the conditions of the statute enacted for its benefit; it in effect said, "True, you failed to give us 90 days' notice of your intention to intersect our right of way, but having constructed your bridge, and we having subsequently reconstructed it, with your approval, we now demand payment," and the brief of the railroad company concedes, not only that the judgment was for damages for a permanent appropriation under the law of eminent domain, but that "the nature and extent of the easement were defined by the plans of the original bridge and the actual occupation pursuant to those plans," which is the equivalent of saying that in May, 1893, the railroad company had elected to waive the requirement that the state should serve a written or printed notice of the appropriation, "which notice shall contain an apt and sufficient description of the lands, streams or waters so appropriated," and had agreed to litigate and determine the amount of compensation due to it for the easement "defined by the plans of the original bridge and the actual occupation pursuant to those plans." Having once taken this position, and having waived compliance on the part of the state of conditions intended for the preservation of its rights, the appellant cannot withdraw that waiver, or take any advantage of any failure on the part of the state to perform conditions prior to May, 1893. Mayor, etc., of New York v. M. R. Co., 143 N. Y. 1, 26, 37 N. E. 494, and authorities there cited.

[2, 3] As already pointed out, the conditions which it is alleged gave rise to the necessity for the construction of the third bridge, for which the present claim is made, were open and obvious in February, 1893, while the original claim was not filed until May of that year. The underlying principle of the law of eminent domain, as we understand it, is that private property shall not be taken for public purposes without just compensation, and that such compensation consists "of the value of the part taken, and damages to the remainder, less any special benefits to such remainder by reason of the taking and use of the part for the purpose proposed" (Lewis on Eminent Domain, § 693 [section 471]), or, as our Court of Appeals has put it, in reference to lands taken for railroad purposes:

"The owner is to receive, first, the full value of the land taken, and, second, where a part only of land is taken, a fair and adequate compensation for all injury to the residue sustained or to be sustained by the construction and operation of the railroad." Newman v. M. E. R. Co., 118 N. Y. 618, 623, 624, 23 N. E. 901, 902 (7 L. R. A. 289), and authorities there cited.

"The first element in the award," say the court in the case cited, "represents the compensation for land which the railroad takes, and to which it acquires title. The second element represents damages which are the result or consequences of the construction of the road upon property not taken, and which the owner still retains. Such damages are wholly consequential, and to ascertain them necessarily involves an inquiry into the effect of the road upon the property, and a consideration of all the advantages and disadvantages resulting and to result therefrom." The court then (118 N. Y. 625, 23 N. E. 902, 7 L. R. A. 289) points out that, where a mere easement is taken, the consequential damages may constitute the principal part of the damages to be recovered, and we know of no principle which permits of a claim under the law of eminent domain being divided up in the manner now attempted. The railroad company had to be compensated, not alone for the easement which was taken, but for the damages to its right of way which would result from the construction of the canal through it. There was only one lawful taking under the statute, and at the time the compensation was fixed the railroad company had notice that the action of the tides and currents was constantly encroaching upon its right of way, and it had a right to compensation for all the damages it might sustain by reason of the construction and method of operating the canal. Whatever occurred subsequent to the adjudication in 1893, the railroad company, which had elected to have its compensation fixed for the taking as it was evidenced at that time, could have no rights under the statutes of 1884. There has been no attempt on the part of the state to take property under that power, and it was only for property taken by the superintendent of public works in the construction of the canal that the state permitted compensation to be exacted from her, and these questions could all have been provided for in the litigation fixing the compensation. The railroad company had the right, knowing the encroachments of the waters, to a sufficient sum to compensate it for any damages which might result to its right of way; it had a right to a sum sufficient to confine the canal to the channel or to the taking which had been made, but it could not await a future trespass and then transform a trespass into a proceeding under the statute, and fix its damages at the cost of the construction of a new bridge, for that is contrary to the established rule in eminent domain proceedings.

[4] This case comes fairly within the rule that a judgment of a court of competent jurisdiction is final and conclusive upon the parties, not only as to the issues actually determined, but as to every other question which the parties might or ought to have litigated. Stokes v. Foote, 172 N. Y. 327, 344, 65 N. E. 176, and authorities there cited.

[5] Assuming that there was authority under section 264 of the Code of Civil Procedure, as it existed under chapter 36 of the Laws of 1897, to allow a claim as for a continuous trespass upon the premises of the railroad company, the limitation fixed by the statute was two years, and the claim here under consideration is not based upon a trespass, but is urged on the ground that it is a part of the damages growing out of the original taking of an easement through the

right of way of the railroad company. There is no allegation that the damages accrued within the two years next preceding the filing of the claim, and the entire theory on which the case proceeded is consistent only with the claim that the damage is incident to the original appropriation of the railroad company's right of way for the canal.

The judgment appealed from should be affirmed, with costs. All concur; SMITH, P. J., in memorandum.

SMITH, P. J. (concurring). I concur in the opinion of Justice WOODWARD, and would add a single other reason for the conclusion reached. By chapter 508 of the Laws of 1884 this improvement was authorized. The original appropriation for the building of the canal and the condemnation of necessary rights was made by the state. The act provided in section 8:

"That the said channel or canal should be maintained at the expense of the county of Suffolk. * * * *"

If, therefore, by failure to protect the said channel part of defendant's right of way had been washed out, the liability therefor would seem to have been placed by the statute upon the county of Suffolk, and not upon the state itself.