ROBERT GARDNER *et al.*

*v.*

EUGENE EBERHART *et al.*

1. FORCIBLE DETAINER—*notice in writing—whether original or a copy.* Where four notices, in writing, of a demand of possession of land are prepared at the same time, all alike except that three of them are addressed to three different occupants of the land, respectively, and the fourth one is retained by the party preparing them, the one retained is not a copy, but all are original, duplicate papers, and the name of the person to whom they are addressed is no part of the notice, and, if these are delivered to the several parties to whom addressed, respectively, the one retained is properly admissible in evidence as a written demand to support an action of forcible detainer.

2. RETURN *upon execution — when land is sold.* It is no part of the return of the sheriff to show what land is sold on the execution, but simply to show satisfaction, part satisfaction or failure to make satisfaction. Where land is sold on execution, the sale, the land sold and the name of the purchaser may be shown by the certificate of sale or by recitals in the sheriff's deed.

3. LEVY UPON LAND—*notice to the debtor, and demanding payment or property.* A portion of a farm upon which a judgment debtor resided was levied upon and sold under execution. It was contended that under the 10th section of the chapter on judgments and executions, the sale was void because the levy and sale were made by the sheriff without notifying the debtor that he had an execution against him, and without demanding the payment of the execution or demanding property to satisfy the same. It did not appear that the debtor, at the time of the levy, had any land in the county subject to levy, which was not a part of the farm on which he then lived: *Held*, a notice and demand for such property would have done him no good, and the statute does not require it.

4. But if it were otherwise, the sale could not be held void for that cause.

5. SAME—*remedy under the statute.* To render the rights of an execution debtor effective under that statute, application to set aside the levy should

be made in apt time, and, if not impracticable, it must be done before the rights of third parties intervene.

6. PRACTICE—*objection for want of proof of signature must be specifically made.* If a party intends to rely upon the fact that the signature to an indorsement or assignment of a certificate of sale is not proved, as an objection to its introduction in evidence, he must call the attention of the court specifically to that point, or it will be presumed the point was waived.

7. SHERIFF'S DEED—*recitals.* The recital, in a sheriff's deed, of a certificate of sale, and the assignment thereof, is evidence of their existence, and, after the execution of the deed, such certificate and assignments thereof cease to be essential muniments of title.

8. HOMESTEAD—*embraces only the tract or ground actually occupied as a residence.* Courts will take notice of the government surveys of land, and also of blocks and lots in towns and cities, and, where a debtor has a dwelling upon any forty-acre tract, or on any town or city lot, which, with the buildings thereon, clearly exceeds in value one thousand dollars, the law regards such forty acres or such town or city lot as "the lot of ground by him occupied as a residence," and his exemption is confined to such tract or lot, and the sheriff may levy on and sell any adjacent tract or lot without the intervention of a jury.

WRIT OF ERROR to the Circuit Court of Jersey county; the Hon. CHARLES D. HODGES, Judge, presiding.

Mr. R. M. KNAPP, Mr. GEORGE W. HERDMAN, and Messrs. WOODSON & WITHERS, for the plaintiffs in error.

Messrs. WARREN & POGUE, for the defendants in error.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This was an action of forcible detainer, brought by defendants in error against plaintiffs in error, before a justice of the peace, and, on appeal, tried in the circuit court of Jersey county. A jury was waived, and the finding by the court was for plaintiffs below, and judgment on the finding, and defendants below bring this writ of error.

To show a demand in writing, etc., as a foundation of this action, it was proven that four papers, alike in every respect, were prepared and signed by plaintiffs below. Each of them began with the words "You are hereby notified," etc. One of them was addressed and delivered to Gardner, one to Johnson,

one to O. Day, and the fourth was retained by defendants in error, and was produced, verified and given in evidence at the trial. This one was addressed to "Robert Gardner." No objection was made to the substance of the paper; but it was objected that the paper produced was a copy and not an original, and that the paper delivered to O. Day, and the paper delivered to Johnson, respectively, differed on their faces from the paper produced, as to the name of the person to whom addressed. This objection is not well taken. Each of these four papers was an original, and the one produced at the trial was a duplicate of each of the others. The name at the head of the paper was no part of the demand, and was merely intended to designate the person to whom it should be delivered. The demand was perfect without the address, and no name need have been written on the face of the demand.

The plaintiffs below claimed to derive title to the land in controversy through a sheriff's deed, founded upon a sale of the land in question, as the property of Robert Gardner, upon an execution issued October 21, 1869, upon a judgment of the circuit court of Jersey county, rendered at the October term, 1868. in favor of White and Smith, against Briggs and Gardner. The levy upon this land was made in November, 1869, and the sale of the land in question was to White and Smith, on December 28, 1869; and the sheriff's deed dated November 20, 1871, conveyed the property to Eberhart and Ruedin, reciting a certificate of sale to White and Smith, and assignment thereof by them to Eberhart and Ruedin.

On the trial the court permitted the judgment and execution, and the return of the sheriff upon the execution, to be given in evidence, and it is now contended that the return upon the execution should have been excluded, and this upon the ground that the return does not show *what* land was sold.

It is no part of the office of a sheriff's return to show what land is sold upon the execution. The office of the return is, to show the satisfaction or part satisfaction of the judgment, or the failure to make satisfaction of any part of the judgment. Where land is sold at sheriff's sale, the sale, with the subject

matter thereof and the name of the purchaser, may be shown by the certificate of purchase or by the recitals in the sheriff's deed.

Exception was taken to receiving in evidence the certificate of sale, as is said, on account of a variance between the execution and the certificate. We find no material variance in that regard, and none is pointed out by plaintiffs in error.

It is contended that the sheriff's deed should have been rejected, on the allegation that there was no proof that White and Smith, the persons mentioned as vendees in the certificate, executed an assignment of the certificate of sale to Eberhart and Ruedin, the grantees named in the deed. The record does show that "the certificate of purchase, with the *assignment thereon*" was read in evidence. These papers are set out in full in the bill of exceptions, and the assignment purports to have been signed by White and Smith. The objection made to the reading of these papers at the trial was placed upon the allegation that the certificate recited a sale upon an execution dated on the 4th of October, while the execution in evidence bore date the 21st of October. The court inspected the paper, and decided that the date of the execution, as recited in the certificate, was the 21st of October, agreeing, in that respect, with the date of the execution in evidence. No objection seems to have been made on the ground that the signatures of White and Smith to the assignment were not proven to be genuine. If plaintiffs in error intended to present and rely on that objection, the attention of the circuit court should have been directed specifically to that point. The bill of exceptions failing to show that this was done, this court must presume that such proof was waived by the defendants below. Again, the assignment of the certificate is shown by the recitals in the sheriff's deed, and the certificate and the assignment thereof ceased to be essential muniments of title after the execution of the sheriff's deed.

It is contended by plaintiffs in error that this sale by the sheriff was void, because the levy and sale were made by the sheriff without notifying Gardner that he had an execution

against him, and without demanding the payment of the execution or demanding property to satisfy the same. It is contended that this was a violation of provisions of the 10th section of the chapter on judgments and executions. It does not appear, from the proof, that Gardner, at the time of the levy, had any land in that county subject to levy, which was not a part of the farm on which he then lived. A notice and demand for such property would have done him no good, and the statute does not require it. If it were otherwise, the sale could not be held void for that cause. To render the rights of an execution debtor effective under that statute, application to set aside the levy should be made in apt time, and, if not impracticable, it must be done before the rights of third parties intervene. This objection can not avail in this action.

Lastly, it is contended that this sheriff's sale was void, upon the ground that the land in question was a part of the homestead of Gardner, and no proceedings were had to have the land subject to sale set off according to the provisions of the statute, found in section 3, chapter 48 a, in Gross' Statutes, page 327.

At the time of the judgment, and until after the sheriff's sale, Gardner was the owner of a farm containing over seven hundred acres, and had held the same in possession for many years. Through this farm there was a public highway; and the dwelling-house, stables and other domestic outhouses of Gardner, were located upon 325 acres of the farm, lying in a body immediately north of this highway. The land sold on execution was part of this farm, and consisted of a full quarter section lying immediately south of the highway, and the nearest part of the land to the dwelling-house was nearly half a mile further east than the house. The 325-acre tract, on which the dwelling was situate, was worth, at the time of the sale, about $15,000. The quarter section which was sold does not seem to have had any connection with the lot of land on which Gardner lived, in any use made of it for domestic or residence purposes. The business of Gardner was that of a farmer, and the land in question was used in that business, merely.

The case does not fall within the letter of the statute, and surely it is not within its spirit. The words of the statute are: "There shall be exempt from levy and forced sale, * * * the lot of ground, and the buildings thereon occupied as a residence and owned by the debtor, * * * to the value of $1000." It is only "the lot of ground" occupied as a residence, and the buildings thereon, which are exempt, and that exemption does not extend beyond the value of $1000.

A *farm* may, as in this case, consist of several "lots of ground;" but the statute exempts only the lot so occupied. The court will take judicial notice of the governmental surveys of the public lands, and that a quarter section of land consists of four forties, each with well-defined bounds. If the forty on which the residence buildings are situate does not exceed $1000 in value it is exempt. *Hill* v. *Bacon*, 43 Ill. 478. It seems to follow that if the forty so occupied did exceed the value of $1000, the other three forties, or either of them, could be levied upon and sold, without violation of the debtor's right of exemption.

Where the debtor occupied four contiguous town lots, all in one enclosure, numbered 12, 13, 14 and 15, and the debtor's dwelling was on lot 13, and another house, on 12, was occupied by a tenant, and a shop was on lot 14, the sheriff sold each of these lots separately. Application was made to the court to set aside all these sales, the debtor claiming exemption for the whole enclosure, under this statute. Lot 13, with the debtor's dwelling thereon, was worth greatly more than $1000. The circuit court set aside the sale of lot 13, and refused to set aside the sale of any of the other lots, and this ruling was affirmed by this court. *Linton* v. *Quimby*, 57 Ill. 272. The court will take notice of the subdivision of town and city property into blocks and lots, as well as the legal subdivision by government surveys of land in the country, and where several forty-acre tracts lie contiguous, or where several village or city lots lie contiguous, and where a debtor has a dwelling on any given forty-acre tract, which, with the buildings thereon, is of the value of more than $1000, or where a debtor has a dwelling

on any given town or city lot, which, with the buildings thereon, clearly exceeds in value $1,000,—in such case the law regards the forty acres, or village or city lot on which the debtor's residence is situated, as the "lot of ground by him occupied as a residence." His exemption is confined to this lot of ground. The sheriff may, in such case, proceed to levy upon and sell the adjacent tract or lot, without the intervention of the jury, and such sale will be valid. The exemption in favor of the debtor is never violated so long as there is left intact a "lot of ground," with the buildings thereon occupied as a residence and owned by the debtor, to the value of $1,000.

The sections of this act providing for a jury to set off the homestead, are for the protection of the creditor in cases of doubt as to the value of the lot of ground to be left as a homestead, or where there are no well-known boundaries by which to divide, such as the boundaries of government surveys, or the boundaries of blocks, or town or city lots.

In the case at bar, the homestead left is worth $15,000, and is not only separated from the land taken by the well-known boundaries of the government surveys, but by a public highway.

Finding no error in the record, the judgment of the circuit court is affirmed.

*Judgment affirmed.*