The plaintiff was at and before the commencement of this action the owner of lots No. 261, 1028, 1240, 1242, 1244, 1246, 1248 and 1255 in Third avenue in the city of New York. The defendants' elevated railroad was constructed and is maintained and operated through that avenue. The plaintiff commenced this action against them and prayed for the relief usual in this class of actions.
The court upon the trial found the rental damages to the lots to be $17,500, and the fee damages $22,000. Most of these lots were situated in the neighborhood of Seventy-seventh street, several miles from the business center of the city.
We have carefully read the evidence and are satisfied that in the estimate of damages injustice was done to the defendants, and that proper rules of law were not applied in awarding the judgment.
The court refused upon the request of the defendants' counsel to find the following facts: "That the easements, if any, appurtenant to the several lots of land, and taken or interfered with by the defendants' railway, aside from any consequential damages to said premises from the taking of the same, have, in themselves, only a nominal value."
This request should have been found, and the refusal to find the facts shows that the court misapprehended the principles *Page 305 
of law laid down in the cases of Newman v. Elevated RailroadCo. (118 N.Y. 618), and Bohm v. The Same (129 id. 576). According to those principles the defendants were bound to pay the value of any property they actually took without any allowance against such value for benefits; and the allowance for benefits could be made only in reduction of consequential damages. Hence it was important for the defendants to have a finding that substantially all the damages were consequential so as to give room for the allowance of benefits.
The court also refused to find the following facts, as requested: "That the only property rights of the plaintiff in said Third avenue taken, appropriated or interfered with by defendants are easements of light and of air and of access in and over said street in front of and appurtenant to the lots of land described in the complaint herein." This was a proper request, and why it was refused is not perceived.
The court also refused to respond to the following requests: That "the presence of defendants' railway and of their stations at Twenty-third and Fifty-ninth streets brings a large number of persons daily into the Third avenue in the immediate neighborhood of the portions of the premises in suit Nos. 261 and 1028 Third avenue, and increased the traffic in and upon said avenue at these points, in the neighborhood of said premises respectively." "That the effect of the proximity of the defendants' stations above mentioned to the said parcels of the premises in suit is advantageous to the business portion of the said premises and produces a special benefit to the same for business uses." We think these facts could with propriety have been found upon the evidence in the case. But the nature and operation of the elevated railroads are so notorious that the courts may assume to be acquainted with them; and from the numerous cases which have come before them, they may take judicial knowledge that they increase the traffic in the wide avenues largely devoted to business purposes and thus generally promote and increase the business there. *Page 306 
The court found the rental damages to lot No. 1255 to be $2,500, and the fee damages $3,000. That lot is situate on the avenue above Seventy-seventh street, and the plaintiff purchased it in 1881 after the elevated railroad was built for $22,500. He testified at the trial that he was sure the lot was then worth $25,000, and that he could now obtain $30,000 for it. He testified that he wanted to keep the property for his family, and on that account did not wish to sell it, and that but for that reason he would sell it for $30,000; he might sell it for $28,000. He was then asked by his counsel this question: "Suppose you could have your right of action against the elevated railroad company without any impairment of it and still sell that property, what should you still be willing to sell it at?" Counsel for the defendants objected to the question as incompetent and improper, and the court overruled the objection. The plaintiff then answered: "If I could keep my right of action against the elevated road I would take $25,000 for it." It is impossible to perceive upon what principle this question and the ruling thereon could be justified. It was not justified by the previous course of the plaintiff's cross-examination, and it enabled him to state in this way what he considered his cause of action worth. The very highest price he had previously put upon the lot was $30,000, and thus it appears that the highest price he put upon his cause of action was $5,000, and yet the court awarded him $5,500. This was certainly a very novel way to test the value of this lot. The court could, with equal propriety, have permitted the plaintiff directly to estimate the value of his lawsuit. What the plaintiff would be willing to sell his lot for under such circumstances was not proper evidence of its value, and we think there was error in receiving it.
Justice requires that there should be a new trial of this action so that the principles of law laid down in the cases above cited may be properly applied.
The judgment should be reversed and a new trial granted, costs to abide event.
All concur, GRAY, J., in result.
Judgment reversed. *Page 307