(7 Misc. Rep. 88.)

SKELLY v. NEW YORK EL. R. CO. et al.

(Common Pleas of New York City and County, General Term. February 5, 1894.)

1. EVIDENCE—JUDICIAL NOTICE.
   The courts will take judicial notice of the general direction of the streets in New York city, and where they begin and end.

2. EMINENT DOMAIN—MEASURE OF DAMAGES.
   Findings that the value of plaintiff's premises had increased since the construction of defendant's elevated railroad are not inconsistent with a judgment awarding damages for the construction of the road, where it appears the property in the neighborhood had increased in consequence of changes in its use which began before the road was built.

3. TRIAL—REQUESTS OF FINE—FORM.
   Requests to find will not be granted where they require each sentence to be passed on, and ask, if the proposed findings of fact are refused, that the same matters be found as conclusions of law, and vice versa.

4. EVIDENCE—DECLARATIONS.
   In an action for injury to premises caused by the construction of an elevated railroad in the street, plaintiff's unsworn statements as to the value of the premises, made to a bank on an application for a loan, are not admissible as declarations against his interest.

Appeal from equity term.

Action by Patrick Skelly against the New York Elevated Railroad Company and another. There was judgment in favor of plaintiff. Defendants appeal. Affirmed.

Argued before DALY, C. J., and BOOKSTAVER and PRYOR, JJ.

Julien T. Davies and Ezra A. Tuttle, for appellants.
Johnston & Johnston and Eugene D. Hawkins, for respondent.

BOOKSTAVER, J. This action was brought by the plaintiff, as the owner in fee of the premises Nos. 21, 23, and 25 Ninth avenue, between Little West Twelfth street and Thirteenth street, for an in-

junction and damages by reason of the erection, maintenance, and operation of defendants' road. It is the usual abutting property owners' action, about which so much has been written that there is little or nothing to be said in further elucidation of the law governing such cases. Appellants contend that the court erred in refusing to find defendants' seventeenth, eighteenth, and nineteenth requests, which are to the effect that the presence of defendants' station at Fourteenth street brings a larger number of persons daily into Ninth avenue, and in the immediate neighborhood of these premises, and increases the traffic in and upon the avenue at this point; and that the result of the proximity of defendants' station at Fourteenth street to the premises in suit is advantageous to the business portion of said premises, and produces a special benefit to the same for business uses which is equal to and offsets any disadvantage to the dwelling apartments in said premises occurring from the maintenance and operation of the railroad. The court found that this station did bring a larger number of persons daily into Ninth avenue in the immediate neighborhood of plaintiff's premises, but refused to find as requested in all other respects. The court might well have refused to find the proximity of the station increased the "traffic in and upon the avenue at this point" as too indefinite. The request is so framed as to leave it doubtful whether the "point" referred to was Ninth avenue at the station or at plaintiff's premises. If the former, it was wholly immaterial to the issue; if the latter, we do not think the fact established by a clear preponderance of the evidence. It must be borne in mind, respecting this and the other refusals to find, before stated, that this was an old-settled neighborhood long before the advent of defendants' road; the houses on the lots in question having been built in 1842 as dwellings. The whole vicinity was, as late as 1870, used almost exclusively as a residence neighborhood, and was thickly built up. About that time it began to change from private dwellings to stores and tenements, warehouses, storehouses, and manufactories, which change is still going on in some portions of that vicinity. This change began, not along the line of Greenwich street, some parts of which are still used for residence purposes, notwithstanding defendants' road runs through it, but commenced in Hudson street, from which it spread to Ninth avenue above Fourteenth street, where Hudson street terminates in Ninth avenue, thus conclusively showing that the change from residence to business purposes was not due to the railroad, but antedated it, and did not follow the line of the road, but another street, from which it spread uptown along the line of defendants' road, and not down. The reason for this is not far to seek. We may take judicial notice of the general direction of the streets in the city of New York, and where they begin and end, both because such facts are within the general knowledge of its citizens, and the plan of the city has been approved by law and is laid down on public maps. Brady v. Page, 59 Cal. 52; Gardner v. Eberhart, 82 Ill. 316; Vanderwerker v. People, 5 Wend. 530. Fourteenth street, crossing Ninth avenue at

right angles, is a business street from river to river, with the exception of a few dwellings, and diverts much travel.    Hudson street runs into Ninth avenue on a slight angle at Fourteenth street, in immediate proximity to the station.    For many years this has been the chief downtown thoroughfare on the west side of the city as far as Chambers street, while Greenwich street, which is a continuation of Ninth avenue from the point where they come together, at Gansevoort street, although nearly parallel with Hudson street, has not been so much used as a business thoroughfare.    Again, Gansevoort street, of late years, for reasons which will be hereafter stated, has diverted a great deal of travel through it, thus leaving three blocks on Ninth avenue, between Gansevoort street and Fourteenth street, including that on which plaintiff's premises are situated, comparatively little used; and hence it follows that there has been no such increase of travel and traffic on that part of Ninth avenue as usually results from proximity of stations on wide avenues.    In arriving at this conclusion, neither the court below nor this court has overlooked the rule laid down in Bookman v. Railroad Co., 137 N. Y. 302, 33 N. E. 333, and Sutro v. Railroad Co., 137 N. Y. 592, 33 N. E. 334.    We fully recognize the fact that the nature and operation of the elevated railroads is so notorious that the courts may take judicial notice that they increase the traffic in broad avenues, and generally promote and increase the business therein, and that the inconveniences and annoyances incident to the operation of the road may be, and, in the case of business property especially, are, quite likely to be offset in whole or in part by the increased facility of access afforded by the elevated system, thereby mitigating or preventing actual loss; and that in such cases it would be inequitable to estimate and award damages irrespective of benefits.    But while this is generally true of all property on the wide avenues well uptown, where the population was sparse before the advent of the elevated system, and facilities of access and departure have been greatly increased thereby, there are exceptions to it, even on wide streets lower downtown, where the population was dense, and facilities for arrival and departure ample, before the road was built; and we think the facts established by the testimony in this case show it to be one of these exceptions.

It is evident both from his findings of fact and conclusions of law that the learned judge who tried this case was conscientiously endeavoring to apply the rule laid down in the Newman Case, 118 N. Y. 618, 23 N. E. 901, and the Bohm Case, 129 N. Y. 576, 29 N. E. 802, and reaffirmed in the cases supra, to the facts before him, for he found as a fact that the presence of the defendants' station at Fourteenth street brings a large number of persons daily into Ninth avenue in the immediate neighborhood of the premises in question, while he refused to find as a fact that this number increased the traffic upon the avenue in front of plaintiff's premises.    It is true he did not give his reasons for this refusal, although the presumption was it would in most cases increase the traffic; but he was bound to do so, if the facts and inferences (some of which we have

attempted to give briefly) warranted him in so doing.    That he had the rule in mind is further apparent from his rulings upon the questions of law submitted to him by the defendants in their favor, among which were the following:  "Plaintiff is not entitled to recover damages in this action except to the extent, if any, by which the disadvantages of the defendants' railroad have exceeded the advantages thereof to said premises."    Also:    "The plaintiff is not entitled to more than a nominal sum for compensation for the easements appurtenant to the premises taken, appropriated, or interfered with by the construction and maintenance of the elevated steam railway, unless he has proved that the physical interference with said easements has resulted in substantial pecuniary injury to the market fee value of the premises; the burden of showing which was upon him."    Also to the effect that the plaintiff must show that "the actual market fee value" of his premises would have been greater if the road had not been built, before he could recover more than nominal damages.    Also, "that the sum which the defendants might pay to obviate any injunction should not exceed the damages resulting to the remainder of plaintiff's premises from defendants' appropriation of so much of the easements of light, air, and access as have been taken for the purposes of maintaining and operating their elevated railroad."

On the submission of the case the defendants presented a series of requests to find, to the effect that there had been no depreciation in the rental value of plaintiff's premises since the defendants' railway had been maintained and operated in front of them; that there had been no depreciation in the rental value of plaintiff's premises since he purchased the same; and that the fee value of plaintiff's premises had not decreased since he acquired title thereto; to which the court answered by finding that the rental value of plaintiff's premises had not been less than it was before the roads were operated, and not less than it had been since the plaintiff purchased the same, and that the fee value had not been less than it was prior to the time of his purchase.    He also found that the fee value of the premises in question had increased since the plaintiff acquired title thereto, and also had increased after the date of the erection and operation of the railroad.    And appellants now contend that the judgment rendered in this case is inconsistent with these findings, arguing that, since the rentals had not decreased, and the value of the fee had actually increased, the maintenance and operation of the railroad could have been of no damage to the premises; which we think is not well-founded, and assumes that the fee and rental values of property in this city will remain stationary no matter what had affected such values before the building of the road, and leaves out entirely the facts proved on the trial, which we have before referred to, and also the further fact of the recent establishment of the Farmers' and Gansevoort markets in its near vicinity.    One of plaintiff's witnesses testifies that since the establishment of these markets property in Thirteenth street, between Ninth and Tenth avenues, has risen more than 200 per cent.; in Little West Twelfth street, between the same

avenues, property has risen from $5,000 or $6,000 to $16,000 and upwards; in the same street, between Eighth and Ninth avenues, lots have risen from $7,000 to $12,000; and in Eighth avenue, below Fourteenth street, further east than plaintiff's property, there has been a rise of from 40 to 50 per cent. in the value of property. Another witness testifies to three successive sales of a plot in Thirteenth street, between Ninth avenue and Washington street, on which there were some old tenements and an abandoned foundry, the first of which was in 1874 sold for $24,500, in 1881 for $29,700, and in 1892 for $69,200; while there is testimony in the case that the value of plaintiff's property on Ninth avenue has not increased more than 15 per cent., or much less than the rise as far east as Eighth avenue; and it seems to us from the evidence in the case that the chief reason for the failure to advance with other property in the neighborhood can be attributed to no other cause than the maintenance and operation of defendants' road. The testimony offered of the appellant on the same subject varies greatly as between the different witnesses, and the same witness even testifies in a contradictory manner concerning the value of the same property at the same time. Now, there is a nearly uniform relation between fee and rental values of property in this city, which is from 7 to 8 per cent., and on this basis of fee value it is apparent that the present rentals are a good deal below what they should have been but for defendants' road. On a review of all the evidence, we think the court was fully justified in coming to the conclusions it did as to the effect of the railroad on fee and rental values. In Becker v. Railway Co., 131 N. Y. 511, 30 N. E. 499, it was said:

"If it [the property] had not increased in value to the same extent that it would have done but for the erection and operation of the road, that is a fact which shows damage. What we now say is that evidence that the value of land on the avenue has not increased in the same proportion as land in the side streets is admissible, and may be considered, in connection with the other evidence in the case, upon the question of fact whether the land of the owner has increased in value to the same extent that it would have done but for the presence of the road. * * * In the nature of the subject, proof of a possibly greater value attaching to the property but for the building of the road is difficult, and somewhat shadowy and vague."

The appellants further contend that the court erred in refusing to find defendants' thirteenth conclusion of law, as requested by them, which was to the effect that in estimating and fixing the sum which the defendants might pay to obviate the injunction herein the special benefit resulting from the benefit of defendants' railroad to the premises in suit should be offset against any consequential damages resulting to said lot and building from the appropriation or interference with the easements in Ninth avenue, appurtenant thereto, by the maintenance and operation of defendants' railroad in front thereof. This the court very properly refused, because it had before found as a fact on sufficient evidence that no special benefits to plaintiff's property resulted from the railway; and for the reasons before given there was no error in the court's refusing to dismiss the complaint, either upon the plaintiff's case or upon all the evidence offered.

Appellants also contend that the court below erred in finding in the nineteenth paragraph of findings of fact that "the structure is boarded over between the tracks," insisting that this is absolutely repugnant to the fact, and is wholly unsupported by any evidence in the case.   If this were so, it would not be surprising that the learned judge had made such an error in the multiplicity of findings requested by the parties hereto.   In the case at bar the defendants made 36 requests to find facts and 21 requests to make rulings upon questions of law; and, in addition, they asked that if the court refused to find any one of the findings of fact it should find the same as a ruling upon a question of law, and the same request was made as to proposed requests for rulings upon questions of fact, and also that each sentence of each proposed finding was proposed separately, the same as if separately numbered.   We have not had the patience to compute the entire number of requests to find and conclusions of law submitted according to these proposals.   In Steubing v. Railroad Co., 138 N. Y. 658, 34 N. E. 369, the court says:

"This is a practice not to be tolerated.   The large number of requests are generally quite embarrassing to the courts.   But when the same matter is requested to be found both as facts and law, it duplicates all the specific findings requested, and the number is still largely increased when every sentence is also requested to be found both as facts and law.   Such a practice is not needful for the protection of the rights of any party, and the tendency must be to ensnare the trial judge, and frequently to defeat the ends of justice by inducing mistakes, confusion, and uncertainty into the records of cases brought up for review.   Proper practice requires that a request to find either facts or law should be plainly stated in a single proposition.   The whole of it can be granted or refused, and any modification of the requested finding should be left to the discretion of the trial judge."

And the court has therefore held that where a request to find embraces several propositions, some of which the party making the request is entitled to have found, and some not, the refusal of the request is not error, and therefore says:

"There is considerable difficulty attending the trial of this class of cases, and a judgment should not be reversed if, upon the whole record, we can see that no harmful error was committed, and that the proper principles of law were not misapprehended or misapplied."

See, also, Struthers v. Railroad Co., (Com. Pl. N. Y.) 25 N. Y. Supp. 81, and we think this is specially applicable to this case.   We do not see how this finding, even if unsupported by evidence, could or did in any way injure the defendants.   The testimony is clear that the nearest rail of the structure is not nearer to the plaintiff's house line than 36 feet.   The finding itself is obscure.   The whole sentence reads:  "The structure is boarded over between the tracks, and between the rails of the tracks there are ties running at right angles with the lines of the house."   But a reference to the testimony of Mr. Osborn, and the diagram, plaintiff's Exhibit A, which is referred to in the index of this case as printed, but which is not, and which we have consulted, as we have a right to do, it being on file in this court, shows that the elevated railroad in front of the premises in suit is composed of two independent structures, one

for the uptown trains and the other for the downtown trains, and that between the two sets of tracks on each of these structures it is boarded over, so that the finding is supported by unquestioned testimony. This disposes of all the exceptions to the findings of fact and conclusions of law urged upon the argument of this appeal and in appellants' brief.

Besides these, two exceptions to the exclusion of evidence were argued by them. The first respects the exclusion of the opinion of one of plaintiff's witnesses as to the cause of the increase in the value of lots west of Ninth avenue and adjacent to Gansevoort market. When the propriety of this question was urged before the trial judge, counsel was asked by the court, "Is not that one of the questions to be determined in this action?" to which defendants' counsel replied: "I think not. As I understand, the rulings of the court of appeals is this: that we cannot ask what would have been the value if the road had not been built, which is the conclusion for the court to draw. But it seems to me to be entirely proper for me to show all of the facts, circumstances, and conditions,"—to which the court replied, and, as we think, very properly: "That you may show, but that is not what you are asking for. You are asking for the opinion of the witness as to the cause of the appreciation of the property, when, if the witness had been asked to state his opinion as to the cause of the depreciation, it would have been directly within the rulings of the court of appeals."

The defendants offered proof of the application of plaintiff to the Union Dime Savings Bank for a loan upon the premises in suit, and the bank's appraisement of the value of the premises, which was excluded. Mr. Leake, the secretary of the Union Dime Savings Institution, was then on the stand, and most of the questions asked were ruled out, because he had no personal knowledge of the matters inquired of. But the papers themselves were in no sense evidence. As we understand them, they were not under oath, were prepared merely for the purpose of procuring a loan. It was a matter entirely foreign to anything connected with the issues in this case, and for this reason the plaintiff's statement contained in them could not be taken as an admission as against his interests in this action. The judgment should therefore be affirmed, with costs. All concur.