Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Henry A. Talbot, for appellant.
Welch & Parsons, for respondent.

NASH, J.   This is an appeal from an order of the Special Term denying a motion made by the defendant to restrain the plaintiff from taking any further proceedings in the action, until he shall have paid the costs and disbursements recovered by the defendant in a former action.

The rule is that if the plaintiff brings a second action without paying the costs of the first, the court will order payment of the costs of the first suit before allowing the second to proceed.   Cuyler v. Vanderwerk, 1 Johns. Cas. (2d Ed.) 247, note.   The rule recites that the defendant answered before making the application, and the point is made by the respondent that the defendant not having made the motion until after serving its amended answer, waived by its laches any right which it might have had to the stay.   In the case cited, it is said:   "Per Curiam. The defendant is never too late, pending the second suit, before the trial, to make his application to stay the proceedings."   In Jackson v. Miller, 3 Cow. 57, the motion was made after a verdict in the second action had been taken subject to the opinion of the court; objection was made that the application came too late:   " Per Curiam.  The application comes before us in season, if made at any time while the cause is in a course of litigation."   In Spaulding v. American Wood Board Co., 58 App. Div. 314, 68 N. Y. Supp. 945, the case relied upon by the respondent, the motion was made although not heard, before an answer was served.   That fact was referred to in the opinion, and it was observed, that the motion was in time, from which it might be inferred that the motion should be made before serving an answer.   But as there was no discussion of the question, the case cannot be regarded as an authority for overturning the long established rule, that the right is absolute, and that the application for the stay may be made at any time while the cause is in the course of litigation.

Order reversed, with $10 costs, and disbursements, and order restraining plaintiff's further proceedings until payment of the costs of the former action granted, with $10 costs.  All concur.

---

SCHMITZ v. BROOKLYN UNION ELEVATED R. CO. et al.

(Supreme Court, Appellate Division, Second Department.   March 2, 1906.)

1. EMINENT DOMAIN—STREET RAILROADS—DAMAGES TO ABUTTING OWNER—EVIDENCE.

In an action for damages to plaintiff's premises by the maintenance of an elevated railroad in front of the property, evidence *held* to show that the property had been increased in value by the construction of the road.

2. APPEAL—REVERSIBLE ERROR—FINDINGS.

In an action for damages owing to the maintenance of an elevated railroad in a street on which plaintiff's property fronted, the refusal of the

court to find that the easements of light, air, and access, aside from any consequential damages, if any, from the taking of the easements, had in themselves only a nominal value, was reversible error.

Appeal from Special Term, Kings County.

Action by Peter W. Schmitz against the Brooklyn Union Elevated Railroad Company and another. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, RICH, and MILLER, JJ.

Charles L. Woody (John L. Wells, on the brief), for appellants.
Alexander S. Lyman, for respondent.

RICH, J. The defendants appeal from a judgment in favor of the plaintiff for $3,339.40 damages to the rental value of the premises described in the complaint, together with $346.65 costs, and enjoining and restraining defendants from maintaining or operating their elevated roads in front of plaintiff's premises after the expiration of 30 days from service of a copy of the judgment with notice of entry thereof, unless within that time the defendants should pay or tender the plaintiff or his attorneys the sum of $7,500, with interest thereon from January 23, 1905. The action is the usual one for an injunction, and damages alleged to have been sustained by an abutting owner upon a public street by the maintenance and operation of an elevated railroad in front of his property. The premises are situate at the northwesterly corner of Flatbush avenue and Fulton street, with a frontage on the two streets of about 216 feet, all of which is affected by the railroad structures. It was purchased by the plaintiff in 1886 for $150,-000, which the evidence of all the experts called shows was its then value. Its lowest present value, as proven upon the trial, was $225,000 and its highest value $275,000. It is occupied by one tenant, entirely for business purposes, under a 10 years' lease, from January 1, 1900, at a yearly rental of $12,000 for the first five years, and $15,000 yearly thereafter; the increased rental being payable at the time of the trial. After plaintiff purchased the property, and before the building of the railroad, the evidence shows it to have produced a gross rental of from $10,000 to $13,000 yearly, largely dependent upon the extent to which a public music hall, to which use a portion of the premises was then devoted, was used. From this gross rental there was payable yearly for the compensation of a manager, janitor, heat, and light $1,-980 and the cost of insurance, then largely in excess of present rates on account of the scenery and drop curtains used in the music hall.

The trial court found, upon defendant's request, among other things:

"Twelfth. That the existence and operation of defendants' railroads in Fulton street and Flatbush avenue, together with the maintenance of two stations of said elevated railroad structure in the immediate locality thereof, has greatly increased the traffic of business in the locality of plaintiff's property, and has brought people and traffic into said street.

"Thirteenth. That the plaintiff's property has thereby incidentally been benefited."

"Eighteenth. That in the immediate vicinity of plaintiff's premises defendants maintain two stations, where people depart from and take said elevated

railroad, and thereby daily bring into the immediate vicinity a large number of people, which is beneficial to both the rental and fee value of plaintiff's premises."

"Twentieth. That on all cross-streets and side streets in the locality of plaintiff's premises, where there is no elevated railroad, real estate has not increased either in fee or rental values as fast, nor in the same proportion, or to the same amount since 1888 down to the present time, as the plaintiff's premises has.

"Twenty-first. That the course of fee and rental values on Fulton street and Flatbush avenue, in the vicinity of plaintiff's premises, since 1888 to the present time, has increased faster and to a greater extent than the course of fee and rental values have on the cross and side streets where there are no elevated railroads in that locality."

"Twenty-seventh. That the presence of defendants' elevated railroad and of their stations at or near the intersections of Fulton street and Flatbush avenue brings a large number of persons daily into Flatbush avenue and Fulton street in the immediate neighborhood of plaintiff's premises, and increases the traffic in and upon said streets at said points in the neighborhood of said properties, respectively."

Counsel for the appellants bases his contention largely upon the proposition that the quoted findings of the trial justice establish that the plaintiff has not sustained damage, and that his complaint should have been dismissed. He directs our attention to several authorities from which he deduces the general rule that, where the evidence establishes that the plaintiff's property has increased in fee and rental values since the construction of the road, a judgment for damages cannot be sustained. This proposition is undoubtedly sound in cases where the increase is traceable directly to the presence of the road and the evidence does not disclose any other adequate cause for the increased value; but in the case at bar the evidence is amply sufficient to sustain a finding that the increase in value of plaintiff's property, both fee and rental, was attributable to causes entirely outside of and disconnected from the construction and operation of defendants' roads. Immediately after their construction and operation, and for several years thereafter, there was not only no advance but a decline in values, both fee and rental. After the completion of the road, on different occasions and as late as 1899, the plaintiff made extensive alterations and improvements in the buildings upon his property at an expense of upwards of $40,000. The defendants' witness Rustin testified that in 1901 the premises were worth $170,000, an amount only $20,000 in excess of their value when plaintiff purchased in 1886, and this, notwithstanding the expenditure of upwards of $40,000 in alterations and improvements, necessarily increasing value. In 1902, according to this witness, the value increased $30,000, and since then has continued to advance, but he testifies:

"The jump of $30,000 in one year was caused by sales in the neighborhood and the demand for that kind of property. The location created the sales in that neighborhood, and the demand for that kind of property all along Fulton street from Smith street up to Flatbush avenue, and Flatbush up to Lafayette. I know the location of Bridge No. 3 has been determined in the last three or four years, that was one of the elements in causing the increase in value, and the subway under actual construction now in Fulton street and Flatbush avenue; that is an important element. And the Long Island Railroad is making extensive improvements for depot purposes, just above Flatbush, at Atlantic avenue. That is another improvement, and the contemplated extension of

Flatbush avenue to the bridge No. 3. That is practically settled. I account for the jump from $240,000 to $300,000 from last year to this year to the new bridge to the tunnel, to the extension of Flatbush avenue and the Long Island improvement, and the number of sales of Fulton street and Flatbush avenue property since 1903."

It was proven, without contradiction, that the effort to locate and mass department stores in Fulton street and Flatbush avenue was started before defendants' roads were projected or constructed, and about the time of the opening of the Brooklyn Bridge in 1884 or 1885. This evidence (with other testimony to which I do not deem it necessary to specifically refer) would, if believed, furnish a proper and satisfactory foundation upon which to base a finding that the increase in values of plaintiff's property (fee and rental) was due to causes wholly disconnected from, and excluding, the construction and operation of defendants' roads. The record discloses that the elevated structures surround and close up the entire frontage, on both streets, of plaintiff's property (which is situated in the heart of the department store shopping district of Brooklyn) to an extraordinary extent. On each side of the plaintiff's building is an elevated railroad, and in front are two; one crossing under the other. The property is so located as to be unusually dependent for light and air upon the streets upon which it abuts, inclosing it upon three sides. The appurtenant easements of light, air, and access are unusually extensive, and have been abridged in such an extraordinary degree as to justify a finding that there was an excess of injury over benefits demanding substantial compensation. These views lead me to the belief that the findings quoted are consistent with the conclusion arrived at by the learned trial justice, that after offsetting benefits received by plaintiff's property from the construction and operation of defendants' roads there yet remained some damage to its fee and rental value.

The determination of whether the trial court was guided by erroneous rules in arriving at the amount of such damage presents the only remaining question necessary to consider. Counsel for the appellants contends that the exception to the refusal of the trial court to find, as requested: "Twenty-sixth. That the easements, if any, appurtenant to the several lots of land interfered with by the defendants' railway, besides any consequential damages, if any, to said premises from the taking of the same, have in themselves only a nominal value"—presents reversible error, and in this contention I think he is clearly right. I am unable to distinguish this case from Bookman v. New York Elevated R. R. Co., 137 N. Y. 302, 33 N. E. 333; Sperb v. Metropolitan Elevated Ry. Co., 137 N. Y. 596, 33 N. E. 319; Saxton v. New York Elevated R. R. Co., 139 N. Y. 320, 34 N. E. 728, and other cases which he cites, in which the refusal to find, practically as requested in the case at bar, was held error, requiring the reversal of the judgments appealed from. The proposition embraced in the request has long been the settled law of this state. The court having first found that the only property rights of the plaintiff taken or interfered with by the defendant were the easements of air, light, and access, and then refusing to find that such easements have in themselves only a nominal

value, seems to me to establish necessarily and conclusively that the learned trial justice determined that the easements had a substantial value which is included in the judgment under review, constituting reversible error.

The record does not satisfactorily show that in arriving at the amount of damages sustained by plaintiff through the abridgment of his easements of air, light, and access to his property by defendants' structures, the court did not include a substantial sum as the value of such easements, instead of the nominal value to which the rules of law laid down by the Court of Appeals in the cases cited limited damages of that character. His refusal to find as requested constrains me to believe that he did. Neither of the cases cited by the learned counsel for the respondent (Sixth Avenue R. Co. v. Metropolitan Elevated Ry Co., 138 N. Y. 548, 34 N. E. 400; Cook v. New York Elevated R. Co., 144 N. Y. 115, 39 N. E. 2) meets this objection. In the first cases the findings clearly show that the benefits found were offset against the consequential damages (which excluded substantial easement values), and in the second case the trial court found that there were no actual, substantial, or peculiar benefits to the property in suit arising from the construction or maintenance of the defendant's railroad in front of the plaintiff's premises, while in the case at bar it is expressly found that plaintiff's property has been actually and substantially benefitted by the construction and maintenance of the defendants' roads.

The twelfth and thirteenth findings of fact in the case at bar are substantially, and in effect, the same as the findings in the Bookman and Saxton Cases and subject to the same criticism, viz., that they do not limit the damages allowed to the difference between the benefits received and the consequential damages sustained, but appear to include a substantial sum as, and representing the value of, the easements interfered with. The request to find is in the identical language used in these cases, and the principles there determined govern the disposition of the appeal in the case at bar. It appearing that the trial court was guided by an erroneous rule, founded upon a refusal to find, the judgment must be reversed. Cook v. New York Elevated R. Co., 144 N. Y. 119, 39 N. E. 2.

Judgment reversed, and new trial granted, costs to abide the event. All concur.