The People ex rel. Chester Thompson, County Collector, Appellee, vs. The Chicago, Rock Island and Pacific Railway Company, Appellant.—The Same Appellee vs. The Chicago, Milwaukee and St. Paul Railway Company, Appellant.—The Same Appellee vs. The St. Louis, Rock Island and Chicago Railway Company, Appellant.—The Same Appellee vs. The Davenport, Rock Island and Northwestern Railway Company, Appellant.

*Opinion filed February 24, 1928—Rehearing denied April 16, 1928.*

1. Evidence—*one of several printed documents is admissible to prove contents of another.* The rule requiring that the best evidence obtainable must be used is to secure a correct determination of an issue of fact, and where a showing has been made that a certain paper is a correct duplicate of a number of papers made by the impression of a printing press, all of such impressions become duplicate originals and each is competent to prove the contents of any other, not as secondary but as original evidence, and are admissible without accounting for the absence of any other of such duplicate originals.

2. Same—*when contents of notices and ballots used in election authorizing additional tax may be proved by duplicates.* Objectors in the county collector's proceeding for delinquent taxes may prove that the notices and ballots used in authorizing elections for additional taxes for hard roads and tuberculosis sanitarium purposes did not authorize a tax in addition to the constitutional limit by introducing in evidence specimen ballots and printed duplicates of the notices, which a printer testifies were made at the same time as those used in the election, (the ballots used having been destroyed six months after the election, according to law,) and where the resolution of the board of supervisors shows the same form of ballot as the specimen offered in evidence, as the presumption is that the notices and ballots were prepared in accordance with the resolution.

3. Taxes—*when election for sanitarium tax does not authorize tax in addition to constitutional limit.* An election for the purpose of authorizing the levy of a tax for a tuberculosis sanitarium does not authorize a tax in addition to the constitutional limit where the

ballot recites that the tax is "in addition to the tax * * * now allowed by law for general county purposes, and in addition to all other taxes which said county is now authorized to levy." (*People* v. *Wabash Railway Co.* 286 Ill. 15, followed.)

APPEAL from the County Court of Rock Island county; the Hon. GEORGE D. LONG, Judge, presiding.

STAFFORD, SCHOEDE & STAFFORD, and SWEENEY & McNAMARA, (DANIEL TAYLOR, CARL S. JEFFERSON, and J. A. CONNELL, of counsel,) for appellants.

BENJAMIN S. BELL, State's Attorney, (DAN H. Mc-NEAL, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants filed objections in the county court of Rock Island county, at the June, 1926, term thereof, to the application of the county collector of that county for judgment and sale of appellants' property for unpaid county taxes for the year 1925. The unpaid taxes levied against the property of appellants amount to forty-seven cents on each $100 assessed valuation, and the basis of the objections is that this amount is in excess of the constitutional limitation and was not authorized by the voters of the county according to law. *Prima facie* proof was made by the collector, and appellants offered proof in an endeavor to show that not sufficient notice was given to advise the voters that the tax was to be in excess of the constitutional limit.

The taxes levied for the year 1925 in Rock Island county for all county purposes were as follows: For general county purposes, fifty cents; hard road bonds, twenty-seven cents; tuberculosis sanitarium, twenty cents; county highway, twenty-five cents; total, $1.22. The objections of appellants are to the hard road bond and tuberculosis sanitarium taxes, amounting to forty-seven cents on each $100

assessed valuation.  By stipulation the objections of the various appellants were consolidated.  The court overruled the objections and granted appellants' appeal to this court, where the causes have been consolidated.

The objectors endeavored to show by evidence that as to the hard road bond election held on April 11, 1922, neither the resolution of the county board, the notice nor the ballot was sufficient to make it clear to the voters that the tax of twenty-seven cents ordered levied by such resolution was in excess of the constitutional limitation of seventy-five cents on each $100 assessed valuation.  The tuberculosis sanitarium tax election was held on November 4, 1924.  Appellants endeavored to show that as to that election neither by the resolution, notice nor ballot was it made clear to the voters that the tax of twenty cents on each $100 assessed valuation was in excess of the constitutional limitation of seventy-five cents.  To make this proof they showed by testimony that the ballots used at these elections had been destroyed six months after the election at which they were used, in accordance with the directions of the statute, and that the notices of the election had been sent out to the supervisors to be posted in accordance with the law.  Witnesses also testified that they had seen posted notices of the election prior to such election under consideration.  One witness testified to having posted such notices for the later election.  Appellants then sought to prove the contents of the notices and ballots by offering forms of notices and ballots which the testimony showed had been printed for the county for these elections and the resolutions of the county board relating to those elections.  The court admitted in evidence the resolution of the board in each case but refused to admit the ballots and notices offered as evidence of the contents of the notices and ballots used.

As to the road bond election of 1922, George M. Gould testified that he is a printer; that he had printed the notices

for that election; that he secured a copy of what he printed from the county clerk, and after printing the same delivered the notices to the county clerk; that he afterwards saw a notice of the election posted on a telephone pole in his voting precinct and recognized it as one of the notices he had printed. He was handed what purported to be a notice of that election and testified that it was one of the originals which he had printed, and was in all respects the same as all other notices printed except that blank spaces were left to be filled in by the county clerk for the proper precinct. He testified that he set all of the type except what he characterized "the fine print," which had been set up by a linotype company and delivered to him; that he read the proof and compared it with the copy he secured from the clerk, locked the type in the form and printed the same without change; that he was satisfied there had been no change in the notice he saw posted from what he had printed, for the reason that if there had been such change he would have noticed it. He also testified that the notice handed to him, which is marked "Objector's Exhibit A," was one of the impressions of the notices which he printed and which were posted, and that except as to the filling of the blanks it was an exact duplicate original; that he printed 300 of these notices. "Exhibit A" was then offered in evidence and its admission refused. Gould also testified that he received the order to print the ballots for the hard road election in 1922 from the county clerk; that he had them printed by another printing company from copy delivered to him by the county clerk; that after they were printed he examined them and compared them with the copy received from the clerk. He was handed a ballot marked "Exhibit B," and stated that the ballots that he had printed were identical with the one handed him except the names of the precincts appearing on the back, which were printed to correspond to the precincts in which the ballots were to be used.

Harold Pirmann testified that he was deputy county clerk of Rock Island county in 1922; that he had destroyed the ballots six months after the hard road election, as required by law; that he assisted in making up the ballot to be printed; that the witness Gould was present and the copy was turned over to him; that the ballots were later returned to the clerk's office, sealed in packages, each labeled for the proper precinct, and that such ballots were distributed to the various precincts.

Clarence N. Isaacson, county clerk of Rock Island county at the time of the hearing, testified that he was a deputy in the county clerk's office in 1922. He identified a specimen ballot offered and handed to him, marked "Exhibit I," and testified that the official ballots distributed were substantially the same as the specimen ballot except as to color of paper and wording to indicate that the exhibit was a specimen ballot; that he had searched his office in an endeavor to find extra official ballots but could not find any; that he voted at the election in 1922, and that the ballot he voted contained substantially the same words as the specimen ballot other than those above referred to. He also testified that the county clerk of Rock Island county, and his deputies, in preparing for the election, endeavored to comply with the resolution of the board of supervisors. The ballot for the hard road election, marked "Exhibit B," is identical in wording with the form of ballot contained in the resolution of the board of supervisors ordering the election.

As to the tuberculosis sanitarium tax election held in 1924, Gould testified that he prepared and printed the notices from copy furnished by the county clerk in the same manner in which the hard road notices were printed; that he compared the proof with the copy secured from the clerk's office and took the proof to the clerk and had it O. K.'d; that he printed 265 of the notices, delivered 260 according to order, and kept five on file in his office. He

was handed an election notice, marked "Exhibit C," and testified it was one of those he kept out of the 265 printed; that it was made by impression from the same type and was a replica of the notices delivered to the clerk.

Isaacson also testified concerning the ballot used in the tuberculosis sanitarium tax election. A ballot was handed him, marked "Exhibit J," and he testified that it came from a scrap book in his office in which he had kept it and was one of the official ballots prepared and used in that election; that other official ballots were destroyed after the election, as required by law. The objectors then offered "Exhibit J," and the same appears to have been admitted in evidence although the abstract shows that at the close of the hearing its admission was denied, as was the admission of all other exhibits except the resolution of the board of supervisors. Isaacson also testified that the notices and ballots were distributed.

William S. Pate testified that he was a supervisor; that he posted the notices in his township for the sanitarium tax election, and that while he had never compared in detail the notices posted with "Exhibit C," that exhibit was a true duplicate of those he posted.

At the close of the hearing the court sustained the objections to all the exhibits offered to prove the contents of the election notices and ballots for the hard road election in 1922 and for the tuberculosis sanitarium tax election in 1924. As to some the record shows that the ground for sustaining the objections was that there was no showing that the type had not been altered; that as to others there was no showing of "common printing." Objections to "Exhibit I," which was a specimen election ballot for the year 1922, were sustained because it was not a copy or secondary evidence. Objections to "Exhibit J," which was the official ballot in the tuberculosis sanitarium tax election, and to "Exhibit K," a general election notice used for the general election in 1922, were sustained without stating

grounds for such ruling. Certain exhibits identified as tabulations from the poll-book of these elections were offered and rejected. An examination of a ballot used at the tuberculosis sanitarium tax election discloses that it is identical with the form prescribed in the resolution of the board of supervisors for that election, which resolution was admitted in evidence.

The question arising here concerns the admissibility of the ballots and notices offered as evidence. It is not contended that the ballot sought to be offered in evidence as to the hard road bond election is a sufficient ballot under the requirements of the law, but it is urged that sufficient proof was not made to justify its admission in evidence. As to the tuberculosis sanitarium tax election notice and ballot, appellee contends not only that insufficient proof was offered to justify their admission in evidence, but also that, even though they were admitted in evidence, it would be seen that the ballots used were sufficient. Appellants contend that the exhibits offered to show the contents of the notice and ballot used in each of these elections were duplicate originals, and as such should have been admitted in evidence to prove the contents of such notice and ballot. The admissibility of exhibits of this character has never been directly passed upon by this court. In the early case of *Gotlieb* v. *Danvers,* I Esp. (Eng.) 455, it was held that where two copies of an instrument or a notice were made at the same time, though each was written out by separate acts, both were deemed to be originals. Greenleaf, in his work on Evidence, (vol. 1, 16th ed. sec. 563*p,*) says: "In the case of printed papers all impressions are regarded as originals." Dean Wigmore, in his work on Principles of Judicial Proof, on page 36 says that an impression from type is evidence of the contents of another impression from the same type, the required assumption being merely that both were produced from the same type. In his work on Evidence (vol. 2, sec. 1234,) Wigmore calls attention to the modern printing

from fixed type, and says it is clear, therefore, that to prove the contents of any one of such impressions (from a printing press) any other one may be used without accounting for the former. Both Greenleaf and Wigmore cite in support of this view the case of *Rex* v. *Watson,* 2 Stark, (Eng.) 116. In that case Watson was charged with treason. The evidence showed that he had caused 500 placards to be printed and that he carried away 25 of them. In order to prove the contents of those posted one of those remaining was admitted in evidence. It was held in that case that all of the placards worked off the press were originals in the nature of duplicate originals, it there being said: "Since it appears that they are from the same press they must all be the same."

In *Manchester, etc. Railroad Co.* v. *Fisk,* 33 N. H. 297, the court considered the admissibility of printed tariffs of freight rates which had been posted at the depots of a railway company. It was objected that the proof of the contents of the notices posted was not sufficient because it was limited to the production of what were called copies, while the originals posted were not produced or their absence accounted for. It was held, however, that in a case of that character the rule in relation to copies does not apply; that the tariff was a printed tariff; that each of the printed copies was an original and the whole was in the nature of duplicates, so that proof of one would be competent evidence of the contents of the whole; that there was existing, from the nature of the process of printing, strong presumptive evidence that the impressions from the same type must be similar.

In *Gardner* v. *Eberhart,* 82 Ill. 316, it was sought to show demand for possession in a forcible detainer case. It appears that four papers were prepared and signed by the plaintiff, alike in every respect except that the papers differed as to the names appearing at the top of each, the name used in each being that of the party to whom the notice

was addressed. It was sought to show the contents of the one served upon the defendant by the introduction of one retained by the plaintiff. It was objected that the paper produced was a copy and not an original. This court there said: "This objection is not well taken. Each of these four papers was an original, and the one produced at the trial was a duplicate of each of the others. The name at the head of the paper was no part of the demand. and was merely intended to designate the person to whom it should be delivered." It does not appear in the opinion in that case by what means the notices were prepared. This rule is also referred to in 22 Corpus Juris, 1314. Numerous cases are there cited holding that where duplicates are produced by mechanical means, such as a printing press, they are duplicate originals and any of them may be introduced in evidence without accounting for the non-production of the others.

We are of the opinion that the above is a sound rule. The purpose of the rule that the best evidence obtainable must be used is to secure a correct determination of an issue of fact, and where a showing has been made that a paper is a correct duplicate of a number of papers made by the impression of a printing press, all of such impressions become duplicate originals and each is competent to prove the contents of any other, not as secondary but as original evidence, and are admissible without accounting for the absence of any other of such duplicate originals. In this case the admissibility of these exhibits is aided by the presumption, many times indulged by this court and urged by counsel for appellees in their brief on another point, that public officials discharge their duties according to law. The statute requires that the board of supervisors shall in its resolution set out a copy of the ballot to be used at an election for authority to levy taxes. By section 46 of chapter 46 of Smith's Statutes of 1925 the county clerk is required to make out and deliver to the supervisors the notice

of election. This section provides what, in substance, shall be the notice. The presumption is that the county clerk in the discharge of his official duty prepared notices and ballots identical with the form of ballot prescribed in the resolution of the board of supervisors. In this case the county clerk and his deputies testified that they did this to the best of their ability, and the ballots offered in evidence as to each election were identical as to form and language with the ballot prescribed in the resolution of the board of supervisors. The evidence fairly shows that no change was made in the type used. We are convinced that sufficient proof was made to show that the ballots and notices offered in evidence were duplicate originals of those posted and used in the elections in question. It was error, therefore, to deny their admission in evidence.

Appellee does not claim that the resolution of the board of supervisors or "Exhibit A" and "Exhibit B," which were the notice and ballot used in the hard road election, were sufficient to advise the voters that the additional tax voted upon was in excess of the seventy-five cents constitutional limit. This ballot as it appears in the resolution of the board of supervisors and as used in the election is as follows:

| Shall county bonds for roads be issued to the amount of One Million ($1,000,000.00) Dollars and an additional tax levied for the payment of interest and principal of such bonds? | YES | |
| | NO | |

This form of ballot in nowise apprised the voter that he was to vote upon the question of additional taxes beyond the seventy-five cents constitutional limit and was clearly insufficient.

As to the tuberculosis sanitarium tax ballot, counsel for appellee contend that even if admitted in evidence it would

show that it was a sufficient notice that the tax voted upon was above the constitutional limit. The form specified in the resolution of the board of supervisors and appearing on the ballot used is as follows:

| | |
|---|---|
| FOR additional tax of 20¢ on each $100.00 assessed valuation of all taxable property in Rock Island County for the period of 10 years for the purpose of establishing and maintaining a County tuberculosis sanitarium, branches, dispensaries and other auxiliary institutions connected with the same, which said additional tax shall be in addition to the tax of 50¢ on each $100.00 assessed valuation now allowed by law for general county purposes, and in addition to all other taxes which said county is now authorized to levy. | |
| AGAINST additional tax of 20¢ on each $100.00 assessed valuation of all taxable property in Rock Island County for the period of 10 years, for the purpose of establishing and maintaining a County tuberculosis sanitarium, branches, dispensaries and other auxiliary institutions connected with the same, which said additional tax shall be in addition to the tax of 50¢ on each $100.00 assessed valuation now allowed by law for general county purposes, and in addition to all other taxes which said County is now authorized to levy. | |

The argument of appellee is, that the language, "and in addition to all other taxes which said county is now authorized to levy," constitutes a notice to the voter that such tax is above the constitutional limit. This question has received the consideration of this court in *People v. Wabash Railway Co.* 286 Ill. 15, where a similar form of ballot was used, and was decided against the contention of appellee

here.  It was there said:  "The provision [of the statute]
that the tax shall be in addition to all other taxes which
the county is authorized to levy, necessarily refers to au-
thority conferred by the General Assembly, and the declared
intention is that the tax for a tuberculosis sanitarium shall
be in addition to other taxes authorized by the General As-
sembly and not subject to reduction with other taxes."  We
are of the opinion that the language referred to in the bal-
lot used in the election here considered must be likewise so
construed, and that it is insufficient as notice to the voter
that the tax sought to be levied is above the constitutional
limit.

For the error of the county court in sustaining objec-
tions to the exhibits offered, the judgment of that court is
reversed and the cause remanded, with directions to admit
the exhibits of the notices and ballots and for further pro-
ceedings not inconsistent with this opinion.

*Reversed and remanded, with directions.*